Grimke, J.
It appears that a period of more than thirty years has elapsed from the death of George Besley, sen., the time when the right to demand dower first accrued, and the commencement of this suit. But as the petitioner resided out of the state until the year 1835, it is attempted to avoid the effect of the exception in the statute of limitations, by a reliance on the laches and gross negligence indicated by not having instituted these proceedings at an earlier period; and undoubtedly the mere lapse of time, which has been truly said to obscure all human testimony, may sometimes be a bar to the assertion of a stale demand. In such cases courts of equity act sometimes by analogy to the statute of limitations, and sometimes unon their own inherent doctrine of discour *503 aging for the peace of society, antiquated demands, by refusing to interfere where there has been extreme and unreasonable backwardness in the prosecution of the claim. Mit. Eq. 269, 274. But I do not know that there is any case in which the defense has been distinctly placed upon this ground, where there was a statute of limitations in force applicable to the case. If the party be guilty of such laches in prosecuting his title as would bar him, if his title icerep solely at law, he shall be barred in *equity. Smith v. [503 Clay, 3 Br. Ch. C. 640. But further than this the courts have not ventured to go. If there is a statute of limitations in force, a court of equity acts not merely in analogy to it, but in strict obedience to its provisions. In Elmendorf v. Taylor, 10 Wheat. 152, it .is truly said that “ although the statutes of limitation do not properly extend to suits in chancery,” because they only enumerate legal remedies, “yet the courts universally acknowledged their obligation.” And this should be more particularly the case in the present instance; for at the time the right of dower accrued, the mode of proceeding was by the writ of dower at law, and it was not until the year 1824, that the petition in chancery was substituted in its place; and admitting that before that period equity had concurrent jurisdiction as in England, for the purpose of removing obstructions to the title, the rule would still be of no less universal application. The court act in obedience to the statute, where, if the claim were asserted at law, the statute would afford the rule. Thus the period of limitation which takes away a right of entry or an action of ejectment, has been held to bar relief in equity where the suit has been instituted in that court. 10. Wheat. 152. And it is only where the court is unable to act even in analogy to the statute of limitations, that it proceeds merely and exclusively upon the staleness of the demand. This was the case in Prevost v. Gfraty, where a trust was involved.
The case of Piatt v. Vattier, 9 Pet. 404, has been relied upon as' a very decisive authority to show that lapse of time is a sufficient answer to the assertion of a stale demand, even where there is a statute of limitations in existence, which contains a saving in favor of persons who are out of the state. If this is so, it is the only case where a doctrine which has been sometimes obscurely suggested, has been distinctly proclaimed and enforced. But an examination of that case will show that the inference attempted to be drawn from it is not correct. The answers did not rely upon *504, 505 the statute of limitations, nor did the complainant in his bill allege that ho was within any exception. Neither of these ques-504] tions were in issue in the cause. *It was as if there were no statute applicable to the rights of the parties, and the case was, therefore, obliged to be decided upon the mere lapse of time, and without any regard to the excuse which the complainant may have had for not commencing his suit at an earlier period. The truth, I suppose, is, that the complainant did not obtain leave to amend his bill because he could not safely aver a continued residence out of the state. And then the case was decided in strict conformity with the rules which prevail both at law and in chancery. The circumstances were entirely different from what they are here. The petition and the agreed case have put the disability to sue of the plaintiff completely at issue, and,- as I before remarked, I know of no case where it. has been explicitly and unreservedly decided that the court is bound to look to the period of limitation in the statute, and yet not bound to regard the exceptions which are contained in the saving clause. If such were the rule, it would entirely reverse the principle upon which a court of equity habitually proceeds, which is, to look particularly at the equitable circumstances which make in favor of one or the other party. Indeed, the contrary was distinctly declared in the similar case of Belch v. Harvey; 3 P. Wms. 287, n.; Smith v. Clay, 3 Bro. 639; Lytton v. Lytton, 4 Bro. Ch. C. 458.
The claim of the petitioner is next resisted on the ground that the defendant is a bona fide purchaser without notice. It would be a sufficient answer to this, that the defendant does not, either by plea or answer, avail himself of this defense. But as the case has been argued upon this ground by the counsel on both sides, and as it is one of very great importance, it shall be considered. The petitioner has a legal title, and it is difficult to see how the allegation of a bona fide purchase, without notice, can be an adequate defense to.such a title; that it is a defense to an equitable title merely, is well' settled; but that it shall be any answer to a plaintiff who combines both the legal and equitable title in her own right, would seem to be incomprehensible if there were nota very great weight of authority on that side of the question. The application of the rule is not peculiar to cases of dower, but has been 505] extended *to other cases also. In Burlac v. Cook, 2 Freem. 84, the plea was held to be good against a legal estate. So in *506 Parker v. Blythmore, 2 Eq. Cas. Abr. 79, the master of the rolls held the plea to be good. On the other hand, in Williams v. Lambe, 3 Bro. Ch. C. 204, which was a bill filed to obtain dower, the chancellor overruled the plea. He said that the only question was, whether a plea of purchase, without notice, would lie against a bill to set out dower; that he thought where the party is pursuing a legal title, as dower is, the plea did not apply, it being only a bar to an equitable claim. But in the case of Jerrard v. Saunders, 2 Ves. 454, the chancellor expressed great surprise at the decision in Rogers v. Seale, 2 Freem. 84 (where Burlac v. Cook, was directly overruled), and decreed that the plea was good against a legal as well as against an equitable title. No notice, however, was taken of the case of Williams v. Lambe. There is the greatest contradiction imaginable between these cases; and two very modern determinations have left the law in the same state of uncertainty. In Collins v. Archer, 1 Russ & M. 284, the master of the rolls says, “ Following the case of Williams v. Lambe, and the general principles of a court of equity, I am of opinion that the defense is of no avail against a legal estate.” On the other hand, in Payne v. Compton, 2 You. & Coll. 457, a directly opposite determination was made, and the plea was held to be good. The only American case in which the question has been made, is that of Snelgrove v. Snelgrove, 4 Des. 289, and it is, perhaps, a more instructive one than any of the English cases. There the plea was held to be of no avail. The chancellor says, “ When the complainant comes with a legal title, I do not see how he can be refused the aid of the court.”
Where the heir sells land to which a right of dower has attached, and which is admitted to be a legal right, it presents a case where A. undertakes to convey not his own land, but the land of B. Under such circumstances, a plea of bona fide purchaser is entirely beside.the case. That defense properly applies where A. undertakes to sell his own land to two or more persons, and where he who has the legal title and the *highest [508 equity is necessarily protected. If the rule promulgated in Burlac v. Cook, and some of the other cases, were to have a general application, it would contribute to shake the titles to real estate more than any other which has been established. In the absence of a registry law, individuals might deal as freely with the property of others as they could with their own. Take, for in *507 stance, the case of Jerrard v. Saunders. The plaintiff had an undoubted legal title, yet the defendant, who claimed under a mortgage subsequently executed, was held to be protected, because ho averred that he was a bona fide purchaser without notice. Thomas Jerrard, who executed the mortgage, had but an estate for life, and could therefore convey no greater estate, yet, by virtue of this novel rule of property, his deed was declared to be superior to the indefeasible title which had vested in the plaintiff. The cases appear to have been so few in England, during the last two centuries, that the question has never been submitted to a thorough examination and research. The principle has been alternately adhered to and repudiated, as the particular circumstances of each case seemed to render it more or less reasonable, or rather, perhaps, as there existed in each chancellor a greater or less disposition to repose upon the authority of adjudged cases.
It is fortunate that the difficulty which exists in England does not exist here. Our titles are all of record; this single circumstance removes a great deal of the embarrassment which surrounds the English cases. And this leads me to remark that the defense in this case does not carry with it the same force which it has in England. For what is the meaning of the plea? — it is that the defendant, having bona fide and honestly paid his money, no person has a right to require him to discover any facts which shall reveal ah infirmity in his title. But here no such discovery is necessary. The English authorities apply peculiarly to a case which can seldom arise in Ohio. There it becomes frequently necessary to institute not a petition, but a regular bill in chancery, making a great number of persons parties, the nature of whose title has always been a secret. The registry of deeds is there the 507] ^exception and not the rule. The consequence is, that a discovery from the defendants themselves is indispensably necessary, in order to remove out of the way the obstruction which hinders the claim of the complainant. Under such circumstances the English courts have sometimes said that, if the defendant will plead that he is a bona fide purchaser without notice, he shall not be compelled to make a discovery, the effect of which will be to invalidate the deeds in his possession. Such a case will rarely arise in this state; the public registry of deeds makes evident the true nature of the title of both parties, without the necessity of *508 rousing from the sleep of half a century the secret imperfections which may exist in some one of the deeds under which a defendant claims. In this case it may be admitted that the deeds of the defendant are all perfect — that is, they may be in exact conformity with the statute which prescribes the mode of conveying real property. No discovery with regard to these is necessary, since what they are is made apparent by the records. But the complainant shows a superior title, and any right which the defendant has acquired other than from her, must necessarily be held in subordination to her title.
The remaining question relates to the mode in which dower should be assigned. There is a difference where the land is conveyed by the husband in his lifetime, and where it is conveyed by the heir. In the former case the widow is entitled to her dower according to the value at the time of alienation, for the heir is not bound to warrant, except according to the value as it was at the time of the sale. But here the alienation was by the heir; and it appeal’s that fifty acres have been cleared on the lot at a cost of §12 an acre, and buildings have been erected worth §300 or §400, and these improvements, with a very small exception, not worth noticing, have been made by the heir. They were then made at his own risk; he is presumed to have placed them there with a full knowledge of his obligations, and of the rights of the complainant; and she is entitled to be endowed according to the value of the land (exclusive of the emblements) at the time of the assignment.