Day, J.
It is claimed in behalf of the defendant that the case is one in which the plaintiffs had no right of appeal to the district court, and that, therefore, the judgment of the common pleas in favor of the defendant must stand, though that of the district court should be reversed.
No motion was made to dismiss the appeal, nor has any objection to the jurisdiction of the district court been taken in any form oilier than that now taken in argument; nor would such objection have been of any avail to the defendant, if it had been interposed of record at an earlier stage of the case; for the case made in the pleadings was not merely for the recovery of money, nor specific, real or personal property, but was for specific equitable relief; and was, therefore, a case to be tried to the court and not to a jury. Such cases are made appealable by the statute. The judgment of the common pleas was, then, vacated by the appeal, and that of the district court is properly reviewable on error; we must, therefore, consider whether error intervened in the rulings and judgment of that court.
The plaintiff claims that the court erred in admitting secondary evidence to be given of the contents of a deed, through which the defendant claims, without sufficient preliminary proof of the loss of the deed. It is a sufficient answer to this objection to say that no exception was taken to the evidence, other than a general exception to all the evidence given by each witness who testified upon that and other points of the case, some parts of which testimony were clearly admissible. It is not error to overrule a general objection to a mass of testimony, where part of it is admissible. Morris v. Faurot, 21 Ohio St. 155.
It is claimed by the plaintiff that the court erred in overruling the motion for a new trial, and thereby the ease, upon the facts clearly proved, is brought in review on its merits.
The theory upon which the plaintiffs framed their case *369 involves the inquiry as to what became of the legal title to the land in controversy after the death of the testator, from whom both parties claim title.
The will makes no disposition of his real estate, other than that it shall be sold by his executors, and that the proceeds shall be paid over by them to a trustee, for the future benefit of his two daughters, who are made legatees of his entire estate. The executors were merely endued with power to sell the real estate and pay the money arising from the sale to the trustee, who was intrusted with the management, and, to some extent, disposition of the fund. But the executors acquired no personal interest or special trust in the property, further than that connected with its sale and payment of the proceeds to the trustee named in the will. Subject to this power, the testator, so far as the executors were concerned, left the title as it stood at law, to pass to his heirs, cumbered with thg equity created in behalf of his legatees.
The case of Dabney v. Manning, 3 Ohio, 321, is directly applicable and decisive of the point. In that case power was given to the executors by the will to sell the land, when, in their opinion, the sale could be made to good advantage, and to pay the proceeds to his children when they became of age. The court said : “ The title certainly descended to the heir, while the trust remained unexecuted, subject to be divested by the execution of the power. But the right of possession did not descend with the title; that passed with the will for the better enabling the executors to effect the objects of the testator.” So, in this ease, it is equally clear that the title descended to the heirs at law of the testator, subject to the execution of the power conferred by his will. The executors had no title further than what was connected with the power conferred on them as executors, and, when they ceased to be executors, the power terminated with their office, and any title they had dependent on the power ended with it.
This case is unlike the cases of Boyd v. Talbert, 12 Ohio, *370 212, and Williams v. Beach, 17 Ohio, 171. In those cases the powers invested in the executors were, like those in this case, intrusted, not to the executors, but to a special trustee.
The defendant claims that the power conferred by the will was executed in such a manner as to give him the title to the land in dispute. This brings us 'to the next question to be considered.
The executors named in the will never attempted to execute the) power. They resigned their trust, leaving the land unsold. Thereupon the administrator with the will annexed was duly appointed and qualified to complete the administration of the testator’s estate. Accordingly, on the 24th day of July, 1849, the administrator sold the land at public sale, and the defendant claims title under the purchaser at that sale. The administrator gave the purchaser a title bond, and put him in possession of the premises.
But a small part of the purchase-money was then paid to the-administrator, and the balance, for which he took the purchaser’s note, still remains unpaid.
Five or six years after the sale the administrator moved out of the state, but, before he went, he resigned the administration, and, as he says: “I -then surrendered the books, vouchers, papers, and notes to the judge of the probate court, Judge McKay, and took his receipt for the same.” Thus the matter stood until August, 1860, when a party interested in the purchase of the -land, sent by mail a deed to the late administrator, to be executed and returned by him, which was done' by the administrator; but the deed was not recorded, and is said to be lost. Its contents are not definitely shown, but it is probable that it was a conveyance of the'lot in question to a persou under whom the defendant claims title by a warranty deed.
It is claimed by the plaintiffs, that the administrátor with the will annexed had no power to make either the sale or the conveyance. Unaided by the statute this would be true. But the statutes in force, when the sale and deed were made, clearly conferred the power. The fifty-ninth section of the wills act provided, that where a will contains *371 a power to sell real estate, apd the executor named in the will refuses to accept the trust, or dies before the power is executed, “ the sale or conveyance, or both, shall be made by the administrator with the will annexed.” 38 Ohio L. 120, same as § 65, S. & C. 1629. By an amendatory act, passed March 8, 1845, the provisions of that section -were extended to cases where executors resign without executing the power, and administrators with the will annexed are expressly authorized, in such cases, to execute such power. 43 Ohio L. 66, and S. & C. 1629, note.
The case of Conklin v. Egerton, 21 Wend. 430, and 25 Wend. 224, relied on in argument, for the limitation of the power to sell personal property only, is of questionable authority in the state where the ease was decided. Room v. Phillips, 27 N. Y. 357. But our statute, unlike that of New'York, gives express authority to sell “lands, tenements, and hereditaments.”
How far the power to sell might be limited by being coupled with personal trusts, conferred by the will, need not now be determined. But where, as in this case, the will merely directs a sale of real estate and payment of the proceeds to another, the case'clearly falls within the provisions of the statute, authorizing the administrator with the will annexed to execute the power.
The purchaser of the administrator, therefore, acquired by the sale and title bond, of the administrator, the right to the possession of the land, and the equitable right, on payment of the purchase price, to a conveyance by deed.
It is claimed by the defendant that he has obtained a full title to the land through a deed made by the administrator. This necessitates a consideration of the rights acquired by that instrument. It was made to the purchaser, or his assignee, without payment of the purchase-money, and, therefore, without a legal or equitable right, on their part, to demand a deed. Under the circumstances disclosed by the record, the good faith of the parties to the deed may well be questioned. To say the least, the case discloses an indifference to the rights of the legatees named in the will, *372 if not a purpose to defraud them out of their legacies. But was anything gained by the deed ?
It appears, that more than eleven years after the sale, and five or six years after the administrator had resigned, abandoned his office and moved out of the state, he executed the deed in question. Clearly he had, at that time, no power to perform any official act as administrator of the estate. He was not, at that time, the administrator with the will annexed of the testator, and, therefore, was not authorized by the statute to convey the land under the power conferred by the will. The deed, therefore, was void for want of power to make it.
But the defendant claims, that although the title of his grantor, derived under the deed of the late administrator, may be defective, he is a purchaser for a valuable consideration without notice of any defects in the title, and must, therefore, be protected.
It is, perhaps, a sufficient answer to this claim to say that the defendant makes no such case in his answer. He merely sets up the deed of the administrator, and solely relies on that as his source of title. The general rule is that the defense of a bona fide purchaser must be pleaded in some form. Larrowe v. Beam, 10 Ohio, 504.
The point is made, upon the mere statement of the defendant in his testimony, that he was told, when he paid for the land and took a deed for it, that the title was good, and that he did not know the purchase-money at the administrator’s sale was not paid; yet the records of the county showed that the title must be derived under the will of Joseph Reed, and failed to show that the power to pass the title had ever been executed. Ordinarily this would have been sufficient to put a purchaser upon inquiry as to how the title had been transmitted, and led to the discovery of the defects therein.
But, waiving this point, does the defendant stand in a position to make the defense of a bona fide purchaser available in his behalf?
In Woods v. Dille, 11 Ohio, 455, it was held that where *373 neither party has the legal title, the question of what protection will be extended to a bona fide purchaser, without notice, does not arise, and that the oldest equity must prevail ; and in Anketel v. Converse, 17 Ohio St. 11, it was said that the rule which protects a bona fide purchaser, without notice, “ is applicable to only such as have acquired the legal title,” and that “ where neither party has the legal title, and the equities are equal, the well-known maxim prevails that “he who is first in time is first in right.”
Row, if'neither party had the legal title, or if the defendant be regarded as not having the legal title, in either case this defense must fail. Both parties claim under the same will, and under the will neither party has the legal title. Both parties under the will have a mere equity, and that of the plaintiffs is the' oldest, and, therefore, the best.
But if it be said that the defendant had the apparent legal title under the administrator’s deed, he encounters a further difficulty; for, however the authorities may conflict elsewhere, in Larrowe v. Beam, 10 Ohio St. 498, it was settled in this state that the defense of a bona fide purchaser, without notice, is not available against one who combines both the legal and equitable title in his own right. Now, we have seen that the legal title of Joseph Reed, the common source of title, descended to his heirs. The legatees under his will are his daughters, and, therefore, his heirs. As such they took the estate, subject to the trusts created by the will. As legatees, when the time at which they could first assert their rights under the will arrived, in 1870, if the power conferred in the will remained wholly unexecuted, they had the equitable right of election to have-the land sold for their benefit, or to waive the sale and take the land. Holt v. Lamb, 17 Ohio St. 874. Since, then, both the legal and an equitable title were united in the plaintiffs, the defendant can not be protected against their just rights, on the gi’ound that he is a purchaser without notice.
It would seem, then, that the defendant can avail himself only of whatever right was acquired by the purchaser *374 of the land under his contract with the administrator, and that the plaintiffs have the right, in equity, if the purchaser or his assignees fail to perform the contract, to have it foreclosed, or the land sold to pay the purchase price and interest.
Whether the purchaser is entitled to be credited for any money paid on the purchase, not paid to the trustee named in the will, need not now be determined. The question may not arise. It only appears that a small amount was paid to the administrator; but whether that was paid to the trustee does not appear. It does, however, appear that most of the purchase-money was never paid. To that extent, at least, the plaintiffs have an equitable charge upon the land, and the court erred in refusing to grant them any relief. Judgment reversed.