## OZARK STATES TRUST CO. v. WINKLER.

No. 10222—Opinion Filed Nov. 8, 1921.

(Syllabus.)

1. **Evidence — Parol Evidence Affecting Writings—Merger of Prior or Contemporaneous Oral Negotiations.**

The execution of a contract in writing supersedes all the oral negotiations or stipu-

lations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact in its procurement; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract.

**2. Same—Written Contract as Sole Evidence.**

Where a contract in writing was not procured by any sufficient artifice, trick, or fraud as will avoid it, and such contract is complete within itself, is unambiguous in its terms, the same is the only admissible proof of such contract.

**3. Same—Carelessness of One Signing—Inducement by Misrepresentations.**

When a person who can read and write, executes a contract, and when he is confronted with it, admits he signed the same after he had read it and knew its contents, but seeks to avoid the same by reason of the representation of the one who procured his signature that it was a general form used in getting subscriptions of stock and that it would not bar him from showing what the real contract was, held, that the one signing was the victim of his own carelessness and unbusinesslike conduct, and this is not a sufficient showing to avoid the same for fraud and deceit in its procurement, and he is bound by its terms.

Error from District Court, Tulsa County; M. A. Breckinridge, Judge.

Action by George W. Winkler against the Ozark States Trust Company to set aside subscription to corporation stock and to recover price paid. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

C. H. Shubert and Argus Cox, for plaintiff in error.

Nixon & Nixon, for defendant in error.

ELTING, J. This was an action brought in the superior court in and for Tulsa county, state of Oklahoma, by George W. Winkler, plaintiff below, defendant in error, against the Ozark States Trust Company, a corporation, defendant below, plaintiff in error herein; petition filed January 23, 1915. This action was brought by the plaintiff below, defendant in error herein, to set aside a subscription to stock in the defendant corporation on grounds of fraud in the procurement of said subscription and to recover the sum of $1,150 and interest, the amount paid for said subscription.

The corporation was a foreign corporation doing business by virtue of the laws of the state of Missouri. The grounds alleged for setting aside said subscription were that the solicitor representing the trust company and who secured the subscription of said plaintiff to said stock, represented and guaranteed to the plaintiff that it would, on or before the first day of October, 1914, open an office at Tulsa, Okla., for the transaction of a general trust company business, and that J. Truman Nixon would be placed in charge of said office, and upon this guarantee the plaintiff subscribed to said stock, and that the company failed to open an office in Tulsa, as agreed, with J. Truman Nixon in charge thereof, and has failed and refused to return the money to the plaintiff on demand and upon tender of stock certificate to it; and alleged, further, that the agent of the defendant who solicited said subscription, in making said representations that an office would be opened to do business in the city of Tulsa, with J. Truman Nixon in charge, did so falsely and fraudulently for the purpose and intent to deceive the plaintiff and to induce him to subscribe and pay for said stock, and that the defendant company well knew that the said representations were false, and the said company did not intend, at the time said representations were made, to carry out said agreement, and that relying upon said representations the plaintiff was induced to subscribe and pay for said stock.

The defendant company filed an answer in the form of a general denial to said petition. Afterwards the defendant filed an amended answer, which amended answer, omitting the caption, was in words and figures as follows:

"Now comes the defendant and by leave of the court, files this, its amended answer in said cause, and for such answer says:

"First. That the defendant denies each and every allegation in plaintiff's petition contained, except as is admitted in this answer.

"Second. Defendant admits that on the 12th day of June, 1914, the plaintiff subscribed for ten (10) shares of the capital stock of the Ozark States Trust Company, for which he agreed to pay the sum of $115.00 per share to be paid for as set out in the written subscription for such stock, a copy of which is hereto attached, marked Exhibit 'A', and that said stock was delivered to plaintiff as set out in plaintiff's petition.

"The defendant further says that said subscription was made upon agreement and express condition, as set out in said subscription as follows: 'No conditions or agreements other than those written or printed herein shall be binding on any party hereto.'

"Defendant further says that no agent or officer of said company was authorized to make any subscription or any other condition than the condition named in said subscription for the ten shares of the capital stock, a copy of which was signed by the plaintiff and is hereto attached as aforesaid, and that said clause was inserted in said subscription for the sole purpose of putting subscribers on notice that the company accepted the subscription on the terms in said subscription stated only, and to put subscribers on notice that no representations, promises or agreements made by any agent would be in any way binding on the defendant company.

"Defendant shows that the plaintiff subscribed for said stock voluntarily under the condition named, and that he is estopped from now claiming that said stock was sold under any representation whatever, except as set out in said subscription; and defendant further says that if any representations were made to the plaintiff as set forth in his petition, which the defendant denies, that the party making said representations was not authorized by the defendant company to make same, and that defendant company had no notice or knowledge that said representations had been made."

"Exhibit 'A'.

"Subscription to Capital Stock.

"The Ozark States Trust Company.

" Springfield, Mo.

"I, the undersigned, hereby subscribe for ten shares of the capital stock of the Ozarks States Trust Company, of par value of $100.00 each, fully paid and non-assessable, said stock to be issued when fully paid for; and I agree to pay therefor $115.00 per share as follows: $15.00 per share to be paid to the Ozark States Trust Company, in cash on date of this subscription, to be placed in the surplus out of which all expenses shall be paid; and $100.00 per share to be paid to said company in one payment, namely, $1,000.00 in 30 days from date.

"The company reserves the right to reject this subscription by written notice to me within 10 days from date hereof, and if rejected total payment made shall be returned to me. No conditions or agreements other than those written or printed hereon shall be binding on any party hereto."

To which amended answer the plaintiff filed a general sworn denial. The defendant asked for judgment on the pleadings, which was overruled by the court, and a jury was empaneled in this cause.

The attorney for the plaintiff made a statement of what he expected to prove in the cause, to the jury, and the attorney for the defendant moved the court for judgment on the statement of the counsel, and the same was overruled. Whereupon the attorney for the defendant made the following statement to the jury:

"Gentlemen, in this case the Ozark States Trust Company had a proposition to raise certain capital in Tulsa. In the first place we filed a general denial and in our amended answer we set forth a subscription, stock subscription which Mr. Winkler signed when he subscribed for this stock, and by the way I think I will read that to you.

"Thereupon counsel for the defendant read said stock subscription to the jury.

"We rely upon that representation in this case that no agent had authority to bind the Ozark States Trust Company, especially after Mr. Winkler had signed that subscription for that capital stock and if we prove that to your satisfaction, we will expect a verdict at your hands."

After the plaintiff had introduced his evidence, the attorney for the defendant demurred to the evidence, and the same was overruled. The attorney for the defendant sets forth in his motion for a new trial and in his petition in error, as an assignment of error, the alleged error of the court in overruling his motion for a directed verdict. We do not find in the record where the defendant corporation made a motion for a directed verdict.

After the demurrer to plaintiff's evidence was overruled, the defendant offered its evidence, whereupon the court instructed the jury, and the jury returned into court a verdict finding the issues in favor of the plaintiff, and fixed his recovery at $1,150 and interest.

Defendant filed motion for a new trial, same was overruled, notice of appeal given, and the cause is now in this court for review upon said appeal.

We think, under the issues as pitched by the pleadings in the case, that this is an action of purely equitable cognizance. The instant case is begun as an equitable action, seeking to set aside a subscription for fraud and to recover the amount of the subscription, but since the parties have treated it as a law action, we will so treat it in this opinion.

In the case of Noland v. Melvin, 47 Okla. 57, 147 Pac. 308, the fourth and fifth paragraphs of the syllabus read as follows:

"4. Where a party to a suit, formerly cognizable only in equity, has a right to insist on a trial by the court, after he has voluntarily accepted a trial by jury he cannot afterward insist upon having the facts passed upon by the court.

"5. The objection that a party had a jury trial to which he was not entitled cannot be raised for the first time on appeal."

To the same effect as the case supra, is Galer et al. v. Berriam et al., 43 Okla. 303, 140 Pac. 155; Border v. Carrabine, 24 Okla. 609, 104 Pac. 906; Harris v. First State Bank of Bokchito, 21 Okla. 189, 95 Pac. 781; Limerick v. Jefferson Life Ins. Co., 67 Oklahoma, 169 Pac. 1080.

While it is not insisted by the defendant below, plaintiff in error herein, that we review this as an equitable cause, we are mentioning the state of this record and the attitude of the parties to show why this palpably equity proceeding is being treated as a law action in this opinion and the reason for the rule we follow in making our holding upon this record.

The defendant below, plaintiff in error herein, assigns as one of his grounds of error the refusal of the court to give a specially requested instruction on the question of intention of the defendant below to carry out the promises to install an office at Tulsa. There is nothing in this contention, for the court gave the instruction requested in substance in his general instructions.

Another objection raised by the defendant below, plaintiff in error, was that the verdict was conditional upon delivery and surrender of the stock certificate. We hold there is nothing in this contention, for the reason that J. T. Woodruff, president of the defendant company, specifically waived tender of the stock certificate in the course of the trial.

We now come to the crux of this case and the serious proposition therein. The record in this case shows that George Winkler, the plaintiff below, defendant in error herein, signed a written subscription to this stock. The execution of this written subscription by Winkler is mainly relied upon by the defendant below, plaintiff in error herein, as its defense in this suit, as is shown by the opening statement of the attorney for the plaintiff in error given herein. A full copy of the said written subscription was attached to the amended answer of the defendant below, plaintiff in error herein, and said amended answer, together with said stock subscription, is set out herein.

At the close of the plaintiff's evidence, the defendant company demurred to plaintiff's evidence, and the same should have been sustained by the trial court. The defendant in error, George Winkler, denied the amended answer with a sworn denial, but on the witness stand admitted the execution of said written subscription; the material part of which written subscription was in substance as follows: That the trust company,

plaintiff in error herein, was not to be bound by any conditions or agreements except those which were set out in said written subscription, and there were no conditions in said written subscription.

On the question of signing said written stock subscription, George Winkler testified as follows, which is his only explanation of why he signed the subscription:

"Q. Now, at the time you made this subscription, Mr. Winkler, did you sign any papers? A. I signed an application for the stock. Q. Is that what you signed, Mr. Winkler? (Handing document to witness.) A. Yes, sir. Q. Was any statement made to you by Mr. Tanner in reference to that? A. Well, there is— Mr. Dillard: Wait a minute, now; what is that question? Mr. Bassett: I asked him if any statement or representations were made by Mr. Tanner to him in reference to that instrument at the time he signed it. Mr. Dillard: Yes or no? Mr. Bassett: Yes. A. Yes, there was some question about it. By Mr. Dillard: Q. Before you signed it? By Mr. Bassett: A. Just state what that was? Mr. Dillard: Wait a minute. I object, as trying to vary a written contract; now I can give you the law on that to show you that any conversations they had to vary a written contract is not admissible in evidence. The Court: Unless it is alleged in obtaining fraud. Mr. Dillard: Yes. The Court: And they allege that. Mr. Bassett: I am not asking him to vary the contract, I am asking him for his understanding of what the contract was. I am asking him if this man made any statement with reference to this contract before he signed it; that hasn't any tendency to vary the original as I see. Q. Just state what statements he made to you, Mr. Winkler. The Court: Let him make it and I will rule it out if it is incompetent. A. He said that this was just a general form used in all subscriptions; I had objected to the form. Q. Now—. Mr. Dillard: Mark this defendant's exhibit 'A'. (Which said document was marked by the reporter defendant's exhibit 1.) The Court: Plaintiff's, isn't it? Mr. Dillard: He didn't offer it. * *

"Cross-Examination By Mr. Dillard:

"Q. You say that you heard that they started to open an office here? A. I didn't get your question. Q. You say you heard that the Ozark States Trust Company started to open an office here? A. No, I didn't hear they started it; I heard that they intended to. Q. They intended to? Q. Mr. Winkler, you signed that did you? (Handing witness defendant's exhibit 1.) A. Yes, sir. Q. Did you read it over when you signed it? A. Yes, sir. Q. You read the last sentence. 'No conditions or agreements other than those written or printed hereon shall be binding on any party hereto'? A.

Yes, sir. Q. Did he tell you it was just a general form? A. Yes, sir. Q. He didn't —the agent, Mr. Tanner, didn't tell you that it wouldn't be complied with, they wouldn't enforce it, did he? A. I didn't get your question. I—Q. He didn't ask you—he didn't tell you that this wouldn't be enforced? You considered it an enforceable contract, did you? A. No. Mr. Bassett: Objected to, as incompetent, irrelevant and immaterial. A. He said— The Court: Overruled. Mr. Bassett: Exception. A. He said, 'Those are general forms, and it is just a general form and it has no bearing at all on our opening an office here or anything like that'; I objected to that. Mr. Dillard: That is all. A. Juror: Just a minute; are we permitted to ask the witness questions? The Court: Oh, yes. By a Juror: Q. I would like to ask Mr. Winkler if he asked this agent to insert any of these promises in this subscription blank when he subscribed to this stock. He made you some promises other than those in that form; did you ask him to insert those in your contract here? A. No, I didn't ask him to put that in. Q. Didn't ask him to give you anything in writing to show that they was going to open that Tulsa office? A. No. By Mr. Bassett: Q. Explain why you didn't do that, Mr. Winkler. A. Well, the reason for that was that Mr. Nixon was already appointed or was the manager, and knowing Mr. Nixon as I did, as I do now, of course, I wouldn't be too critical of anything of this kind, and knowing that Mr. Nixon would straighten things out all right and their representative wouldn't if he had the right spirit, he wouldn't try to force something on me that wasn't right."

The case of White Sewing Machine Co. v. McCarty Furniture Co.,58 Okla. 545, 160 Pac. 495, both in point of fact and the principle involved, is a case in point with the instant case. The White Sewing Machine Company sued the defendant for the balance on a sewing machine account, and the defendant set up certain allegations of fraud as inducement for the purchase, the same as in the instant case. The defendant admitted signing a written order like the following:

"This order is given subject to approval of the White Sewing Machine Co., and if accepted or filled in full or in part, to be settled for at the prices and terms above set forth. It is understood that no claim of any understanding or agreement of any nature whatsoever between this company and its dealers will be recognized except such as is embraced in written orders or is in writing and is accepted by said company in writing from its home office at Cleveland, Ohio."

The cause in the cited case was tried to a jury and the judgment was in favor of the defendant. Cause was reversed by this court with judgment directed in favor of the plaintiff. The reason expressed for signing the written order in the cited case was that the agent was in a hurry to catch a train and the defendant did not have time to read it, and was induced to sign it by reason of the alleged fraudulent representations. In the cited case the following holding was made:

"Assuming that the agent made the representations pleaded and that they were the cause moving defendant to sign the contract, when he did so with the clause in the contract above set forth staring him in the face, he must abide thereby. In Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 Pac. 577, in the syllabus it is said:

" 'A person signing an instrument is presumed to know its contents, and one in possession of his faculties and able to read and having an opportunity to read a contract which he signs, if he neglects and fails to do so, cannot escape its legal liability for the reason that at the time false representations were made to the effect that the writing contained the verbal understanding of the parties.'

"And in the body of the opinion it is said:

" 'The identical questions presented by the record in this case have heretofore been determined by this court, and these two propositions are settled beyond controversy: First. Where a person signs a written contract, if he is in possession of his faculties, able to read, a mere false representation to such a person that the writing contains their verbal understanding is not the fraud contemplated upon which parol evidence may be admitted to alter or vary the terms of a written instrument. Second. The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of facts, and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract.'

"In Ames v. Milam, 53 Okla. 739, 157 Pac. 941, in the syllabus we said:

" 'Merely representing, to a man in possession of his faculties and able to read, that a writing embodies a previous verbal understanding, is not such fraud as will avoid the instrument.'

"And in the opinion the court said:

" 'The fact that defendant was too busy to read the contract, or that it suited the convenience of plaintiff's agent for him to sign it, so he could make the outgoing train. does not relieve defendant of his duty to apprise himself of its contents.'

"The cause is reversed and rendered, and defendant taxed with the costs. All the Justices concur."

The Supreme Court of the United States, in the case of Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203, in commenting upon a similar case to the one at bar, had the following to say:

"It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were premitted, contracts would not be worth the paper on which they are written. But this is not the law."

In the case of White Sewing Machine Co. v. McCarty Furniture Co., supra, it appears that the defendant did not read over the written contract but relied upon the representations of the agent. The reason he gave for not reading it was that the agent was in a hurry to catch a train. In the instant case, the defendant in error in his evidence admits that he read over the written subscription, that he knew its contents, and objected to its form, and that the agent answered him in this wise:

"He said that this was just a general form used in all subscriptions. I had objected to the form."

And yet, in the face of reading it and knowing its contents, and with this kind of a statement from the agent of the plaintiff in error, Winkler admits that he signed said written subscription.

This record shows that Mr. Winkler was not an ignorant man. He could read and write and had had at least some business experience, and the record shows that he was an architect by profession. He had the same opportunity and was just as capable of judging the instrument he was signing, and its legal effect, as was the agent. There is nothing in the statement of the agent at the time of the signing of the subscription, as disclosed by Winkler's evidence, that would constitute such fraud and deceit as an inducement for Winkler to sign said written subscription as would avoid the contract and that could be held sufficient in law to now permit him to avoid the legal responsibilities resulting from his signing the written subscription. He signed it with his eyes wide open, and knowing all the facts. He did not require the conditions to be written in it before signing it, but, as he stated, relied upon the fact that he had confidence in J. Truman Nixon, who was to manage the business of the concern, to do the right thing in the matter.

The rule as to varying, changing, or altering the terms of a written contract by parol evidence is laid down in the first paragraph of the syllabus of the case of McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524, which reads as follows:

"The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representations made prior to or contemporaneous with the execution of the written contract are inadmissible to contradict, change, or add to the terms plainly incorporated into and make a part of the written contract."

In the application of this law to the contract in the instant case the effect is that when the defendant in error, George Winkler, signed that written contract, all previous negotiations, conditions, representations, and terms of agreement were merged in the contract of subscription, and that contract is binding upon George Winkler, the defendant in error, and upon the plaintiff in error, the trust company, unless, he, Winkler, was induced by deceit and fraud to sign that written contract, and said deceit and fraud is such as is held in law sufficient to avoid it.

It has been held in numerous cases—in fact we know of none to the contrary—that where one is able to read and write and signs a contract without examining the same or reading it, even though the party who secures his signature to the contract represents that it embodies the entire agreement and it afterwards turns out that it does not, that is not sufficient for him to avoid that contract. It has been held, however, that where a person is handed the written contract and he examines the same and finds that it does contain all the terms and conditions of the oral negotiations, but if by artifice and surreptitious acts the execution of another contract in writing not containing the terms of the one shown to the party is procured—this is held to be a sufficient deceit and fraud to avoid its terms. The fraud in such instance being such that the party sought to be bound was prevented from executing the contract which he was led to believe he was signing. This is sufficient to avoid the contract, but which contract would be binding upon the party signing but for the fraud in its procurement.

The third paragraph of the syllabus of the case of McNinch v. Northwest Thresher Co., heretofore cited, reads as follows:

"If a party is induced to sign a contract by fraud, he can, of course, avoid it for that

reason. It is, however, clear that merely falsely representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means."

In the instant case we have a man who can read and write and who we have the right to infer from this record is at least of average intelligence, and after reading the contract and knowing its contents, signs the same. The explanation by Winkler for signing the contract is that the solicitor, when the signer objected to the terms, told him that it was a general form used in securing subscriptions to stock, and that it would not prevent his showing the real contract. This does not show such a trick or artifice as constitutes legal deceit in the procurement of a contract, and is not such as a reasonable man would rely upon, and in taking the representations of the solicitor as to the legal effect of the contract he was merely guilty of carelessness and unbusinesslike conduct in so doing, and it is no defense.

The following are some of the authorities sustaining the above rule as to fraud: Herron v. Rumley & Co., 29 Okla. 317, 116 Pac. 952; Liverpool, London & Globe Ins. Co. v. Richardson Lumber Co., 11 Okla. 585, 69 Pac. 936; Guthrie & W. R. Co. v. Rhodes, 19 Okla. 21, 91 Pac. 1119; Garrison v. Kress et al., 19 Okla. 433, 91 Pac. 1130; Jackson v. C., etc., R. Co., 54 Mo. App. 636; Pierse v. Bronnenburg's Estate (Ind. App.) 79 N. E. 419.

The following are authorities and quotations therefrom supporting this holding:

In the case of Guthrie & W. Ry. Co. v. Rhodes, supra, Mr. Justice Irwin, who delivered the opinion of the court, says:

"We take it the rule is well established that, in the absence of any evidence of incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound by its express terms and conditions therein contained, and that he cannot set up his own carelessness and his own indolence as a defense, and, because he failed to make use of the faculties possessed by him for determining its conditions, be heard to say that its terms or conditions should be other or different from what they are."

The court in the above case cites Mullen v. Beach Grove Park, 64 Ind. 202, and quotes therefrom as follows:

"Answer admitting the execution of the subscription sued upon, but alleging that the person procuring his signature had misrepresented the contents of the subscription and the extent of the liability the defendant would incur by signing it, is insufficient."

Chancellor Kent, in volume 2, p. 485, is also quoted as follows:

"The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or an indifference to the ordinary and accessible means of information."

In Mower Harwood Creamery & Dairy Supply Co. v. Hill, 135 Iowa, 600, 113 N. W. 466, the first paragraph of the syllabus reads as follows:

"Where one who can read signs a contract without reading it or having it read to him, he is bound by it, although its provisions are different than he supposed."

To the same effect are: Reed v. Coughran et al. (S. D.) 111 N. W. 559; Grieve v. Grieve et al., 15 Wyo. 358, 89 Pac. 569, 9 L. R. A. (N. S.) 1211; Wood v. Wack, 31 Ind. App. 252, 67 N. E. 562.

This cause is, therefore, reversed and remanded for further proceedings not inconsistent with the holding herein.

HARRISON, C. J., PITCHFORD, V. C. J., and McNEILL and NICHOLSON, JJ., concur.