## UNION NAT. BANK v. LAVACOTA OIL & GAS CO.

No. 13094—Opinion Filed Jan. 30, 1923.

Rehearing Denied April 10, 1923.

Application to File Second Rehearing Denied May 8, 1923.

(Syllabus.)

**Mortgages—Foreclosure—Defenses—Contemporaneous Oral Agreement.**

The right of action of a mortgagee to foreclose the mortgage on default in payment of notes for borrowed money, secured thereby, prescribing the manner and method of payment, and the right of the payee in default of payment, and the conditions under which the payee may declare the whole sum due and foreclose his lien, cannot be abated or defeated by a plea and proof of a contemporaneous oral undertaking as to a different manner or method of payment.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by the Union National Bank against the Lavacota Oil & Gas Company for mortgage foreclosure. Judgment for defendant, and plaintiff brings error. Reversed. .

Stuart, Cruce & Bland, Thompson & Smith, and E. J. Doerner, for plaintiff in error.

J. M. Springer and E. G. Wilson, for defendant in error.

BRANSON, J. On the 27th day of January, 1921, the plaintiff, the Union National Bank of Tulsa, Okla., plaintiff in error herein, filed its petition in the district court of Creek county, Okla., against the Lavacota Oil & Gas Company, a corporation, the defendant in error, in which the plaintiff, omitting the allegations, prays judgment as follows:

"Wherefore, the plaintiff prays the court to appoint a receiver for the above described real estate and property, with the power and for the purpose of preserving and operating said property; that plaintiff have judgment against said defendant for the principal sum of ten thousand six hundred and seven 06-100 ($10,607.06) dollars, being the amount due on said notes and mortgage, and interest, and also for the sum of one thousand and

sixty and 70-100 ($1,060.70) Dollars attorney's fee and for the costs of this action and for further judgment foreclosing the lien of said plaintiff upon the oil and gas lease on said real estate, to wit. * * *"

In brief, the plaintiff's petition is a suit upon three promissory notes and to foreclose a mortgage lien upon an oil and gas leasehold estate, created by a certain oil and gas mining lease, on land therein described, situated in Creek county, Okla.

To this petition the defendant filed its answer, and later an amended answer, admitting the execution of the notes and mortgage pleaded by the plaintiff, and among other things alleged that the said notes and mortgage were executed by the president of the defendant corporation without the authority of the said corporation; that plaintiff was endeavoring to foreclose as if it were a chattel mortgage, and further alleging:

"That at same time and place (time and place of executing the notes and mortgage—ours), and as a part and parcel of the same transaction, it was mutually orally agreed between the officers and agents of the plaintiff, and the officers and agents of the defendant, that the defendant would execute to the plaintiff a valid assignment of the oil runs produced and saved from said premises, and that the plaintiff should receive and accept the same until the notes and mortgage given were fully paid, and that said notes and mortgage should be paid and discharged from the oil runs of said property and not otherwise; and, that the said plaintiff should receive said oil runs and indorse the same as a credit upon the notes sued upon herein, and that at the time of the indorsement of each amount received said note should be extended from time to time until said notes were fully paid off and discharged and satisfied from the oil produced and saved from said premises as aforesaid."

To this last quoted part of the defendant's amended answer, the plaintiff filed a demurrer, which the record fails to disclose was acted upon by the court. At a subsequent date, the plaintiff filed a reply to the amended answer, and on the day of the trial on the merits, the demurrer by consent of the parties was presented to the court, and by the court overruled, to which plaintiff duly excepted.

The question of the appointment of the receiver is not discussed in the brief filed in this cause, and no consideration of the propriety thereof will be given in this opinion. The question raised by the answer on the part of the defendant, that the president executed the mortgage and note sued on without any authority of the corporation, seems to have been abandoned in the trial, and is not discussed in the brief.

The only question remaining for decision under the record presented herein is raised by plaintiff in error's assignments Nos. 2 and 6, to wit:

"(2) The court erred in admitting, over the objection of the plaintiff in error, incompetent, irrelevant and immaterial testimony offered by the defendant in error.

"(6) For that the judgment of the court upon the plea in abatement of the defendant in error that this action was prematurely brought by the plaintiff in error, was erroneous, unsupported by the evidence and contrary to law."

The judgment entered by the trial court, omitting that part which is immaterial to the question, is:

"That the action of the plaintiff, the Union National Bank, was prematurely brought; and the court having heard the evidence and arguments of counsel, finds that the defense of the Lavacota Oil & Gas Company, that the action by the Union National Bank is prematurely brought, should be sustained."

The question is, "Was there any competent evidence presented to the trial court on which said judgment can be sustained?"

The notes sued on, ordinary promissory notes, made payable to the plaintiff, the Union National Bank, and the mortgage on the oil and gas leasehold estate, omitting the whereas clauses, reciting the description of the property, and the amount of the notes secured, reads as follows:

"Now, therefore, as security for the payment of the said promissory notes, hereinabove described, the party of the first part does by these presents mortgage unto the party of the second part, its successors and assigns, the above described oil and gas mining lease and leasehold estate, and all right, title and interest and estate of said first party in and to all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, including all oil stored on said land belonging to first party and all oil and gas wells, oil well supplies and machinery of every kind and character, buildings, derricks, pipe lines, tanks, casings, telephone lines, livestock, vehicles located on, in or under said above described property, and all other property of every kind and description on the said lease, or belonging to said lease wherever located. * * *"

The mortgage then provides that the property would be held intact, and that in event default was made in payment, mortgagee could foreclose; in which event mortgagee could apply for receiver.

The record discloses that one Mr. Vaughn first sought from the plaintiff a loan for the defendant oil company, and discussed with the officers of the plaintiff bank the amount of oil, etc., being produced from the oil and gas lease which was offered the plaintiff bank as security for the loan; the said Vaughn expressing to the officers of the plaintiff bank his opinion as to the period of time said notes would be required to run in order that the bank might receive full payment on the proposed loan from the oil runs from said lease; that having in mind the conversation and the opinion expressed by the said Vaughn, as to the amount and value of the oil that the said lease would produce, the said notes were executed by the president of said defendant oil company to the said bank to run a sufficient period of time from date, to wit: February 16, 1920—one 90 days, $12,000; one 120 days, $5,000, and one 180 days, $7,000, in which the said officers of the defendant oil corporation thought that the oil runs from said lease would fully pay the notes, and incorporated in the said mortgage contract on said leasehold an assignment of the oil runs to said bank in that provision of said mortgage contract which reads as follows:

"As further security for the payment of the said notes, and the interest thereon, the party of the first part hereby sells, assigns, transfers and sets over to the party of the second part its interest of the mineral, oil and natural gas produced and saved from the said premises until the said notes and all sums due thereon are fully paid, and the party of the first part agrees, upon demand of the party of the second part, to execute any other and further instrument of writing, including those required by the pipe line companies or purchasing parties, the Secretary of the Interior of the United States, or those acting under him, as are now, or may hereafter be, necessary to transfer said part of said oil or gas to the party of the second part or secure the payment of same to be made to the said party of the second part."

The said defendant oil corporation did execute what is known as a division order, which was filed with Cosden Pipe Line Company, which said division order authorized the payment by the said pipe line company to the plaintiff bank for the oil runs by the said pipe line company from the said mortgaged leasehold; and the proceeds of the oil so taken and paid to the plaintiff bank under said division order were by said bank placed to the credit of the defendant oil company on its said notes. Nothing in this division order alters the contract shown by the notes and mortgage. Said notes were extended from time to time by the said plaintiff bank, and after the expiration of the last extended period, and to wit, on the 27th day of January, 1921, as aforesaid, the said plaintiff began this suit.

The defendant oil company pleaded and sought to prove an oral agreement, which it alleged was made concurrent with the execution of the notes and mortgage, to the effect that the notes should be paid and satisfied out of a particular fund, to wit: "The oil runs arising from the leasehold in question." And the trial court found that such alleged agreement was made, and entered judgment for the defendant abating plaintiff's action.

The contention of the defendant, as epitomized in its brief, is:

"An agreement as to the time, method, or manner of payment does not in the very least affect the note nor its terms or condition, but provides merely for the performance of the contract." Citing Faux v. Filter, 223 Pa. 568, 72 Atl. 891, 132 Am. St. Rep. 742; Gandy v. Weckerly, 220 Pa. 285, 69 Atl. 858, 123 Am. St. Rep. 691; Keller v. Cohen (Pa.) 66 Atl. 862; Clinch Valley Coal & Iron Co. v. Willing, 57 Am. St. Rep. 626, 180 Pa. St. 165; Lyman Peck and Fennimore Peck v. Russell Beckwith, 10 Ohio St. 498; Mackin v. Darrow Music Co., 69 Oklahoma, 169 Pac. 497.

An examination of the authorities cited by counsel for defendant discloses that the decision reached by the court in each case is based upon a state of facts in parol which, if the note were enforced, would be tantamount to a fraud upon the maker by the payee in the method of securing the execution of the note; or failure to comply with the parol contemporaneous agreement would leave the note without consideration.

The notes and the mortgage constitute the only written evidence of the contract involved herein, and coupled with them is the right to and remedy of foreclosure, in event the terms and conditions of said written instruments are breached.

The mortgage above quoted provides that, if the notes were not paid when due, the bank could foreclose its said mortgage on the lease, machinery, etc.

Section 942, Rev. Laws of Okla. 1910, is as follows:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

The case of Deming Investment Co. v. Shawnee Fire Insurance Co., 16 Okla. 1, 83 Pac. 918, says:

"A contract in writing, if its terms are free from doubt and ambiguity, must be permitted to speak for itself, and cannot, at the instance of one of the parties be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; and this principle is applicable to contracts of insurance."

See, also, Mandler v. Starks et al., 35 Okla. 809, 131 Pac. 912; Lusk et al. v. White, 58 Okla. 773, 161 Pac. 541; First Nat. Bank v. Richburg, 75 Okla. 1, 181 Pac. 145; Romans v. Shannon, 80 Okla. 199, 195 Pac. 298; Ozark Trust Co. v. Winkler, 84 Okla. 7, 202 Pac. 12; Union Nat. Bank v. Pirotte (Kan.) 193 Pac. 327; Neale v. Albertson, 39 N. J. Eq. 382; Sarah J. Carlton v. The Vineland Wine Company, 33 N. J. Eq. 466; Sangston, etc., v. Gordon & Riely, 22 Gratt. 755.

To sustain the contention of the defendant in this action would be to strike down the plain, clear, and unambiguous contract in writing, and to deny the plaintiff its mortgage lien given to secure the money loaned, and the right and remedy which the law reads into every such mortgage contract, to-wit: "The right of foreclosure in default of payment"—such a defense, we think, is not permitted by the law.

The judgment of the lower court is reversed, with instructions to enter judgment for the plaintiff on the notes sued on, and foreclosing the mortgage lien on the leasehold estate described in plaintiff's petition, less, of course, any amount, or amounts, received by the plaintiff since the filing of this action.

JOHNSON, V. C. J., and KANE, McNEILL, KENNAMER, and NICHOLSON, JJ., concur.