## DRENNAN v. LUSCHEN.

No. 14484—Opinion Filed June 30, 1925.

Rehearing Denied Feb. 9, 1926.

**Fraud—Misrepresentations—Matters of Fact and of Opinion—Fraudulent Sale of Corporation Stock.**

Where the secretary of a corporation is informed that a prospective purchaser of its stock has come to him for information concerning the value of such stock, the property and earnings of the corporation, and the amount of its capital stock as a basis for determining whether or not to buy, the statements and representations thereupon made by such secretary to induce the purchase are matters of fact and not mere opinions. Reliance thereon by the purchaser to his detriment constitutes a defense to an action thereafter brought by such secretary as indorsee and holder of a note executed in part payment for such stock, where it is shown that such statements and representations of fact made by such secretary were false and that such stock was practically worthless.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Canadian County; James I. Phelps, Judge.

Action by R. H. Drennan against M. Luschen upon a promissory note. Judgment for defendant, and plaintiff brings error. Affirmed.

This action was commenced by plaintiff filing his petition in the district court of Canadian county September 7, 1920, wherein it was alleged in substance that on or about March 6, 1918, defendant, M. Luschen, for a good and valuable consideration, executed and delivered to Homer Peoples his promissory note in writing for the sum of $2,500, due 6 months after date and bearing interest at 6 per cent. per annum; that plaintiff became the owner and holder of said note for value and before maturity, and that he is now the owner and holder thereof; certain credits were shown to have been made on the note and judgment was asked for the sum of $2,040, together with interest and attorney's fee, aggregating the sum of $2,698.

Defendant answered by general denial, but admitted the execution of the note; he specially pleaded that the note was executed in part payment for 2,000 shares of stock of the Rainbow Lead & Zinc Company, which he purchased from Homer Peoples, and that in the sale and purchase of said stock, plaintiff co-operated with Homer Peoples; that to induce defendant to purchase said stock

plaintiff made certain false and untrue statements to this defendant in reference to the solvency, past earnings and future prospects of the Rainbow Lead & Zinc Company, and that defendant relied upon said false and untrue representations by the plaintiff, and was thereby induced to pay to the said Homer Peoples the sum of $2,500 in cash, and to execute the note sued on in the sum $2,500, in payment for said stock; that said stock was in fact practically worthless and that by reason thereof the consideration for said note has failed; that plaintiff, by reason of the false statements and representations made by him to the defendant, to induce the purchase of said stock by the defendant, is not an innocent holder in due course of said instrument. By way of cross-petition, defendant alleged that subsequent to the execution and delivery of said note and before he had learned of the false and untrue representations made by the plaintiff, he paid on said note the sum of $500, and that by reason of the facts stated he is entitled to recover from the plaintiff the said sum of $500 so paid upon said note.

Plaintiff replied to the answer and cross-petition by a general denial, and on the issues thus framed the case was tried to the court and jury November 20, 1922, resulting in a verdict in favor of the defendant for the sum of $500 upon his cross-petition. After unsuccessful motion for new trial plaintiff has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

Pearson & Baird, for plaintiff in error.

H. L. Fogg and J. C. Snyder, for defendant in error.

Opinion by LOGSDON, C. For reversal of this case, plaintiff relies upon two propositions. His first proposition reads:

"Since the defendant in his evidence admitted the execution of the note sued on and admitted that he had not paid the same, but defended solely on the ground of fraud, the burden of proving fraud was upon him and the record shows that no fraud whatever was proved."

This proposition raises and presents the question of the sufficiency of defendant's evidence to sustain his allegations of fraud inducing the execution and delivery of the note.

It appears from the evidence preserved in the record that Homer Peoples in March, 1918, was a stockbroker and salesman, and that he owned about 2,500 shares of the

Rainbow Lead & Zinc Company, which were pledged to the plaintiff, R. H. Drennan, as security for an indebtedness of $3,200. About March 1st of that year, the defendant, M. Luschen, had sold out his grain elevator situated in the town of Piedmont. Immediately thereafter, Peoples appeared at Piedmont seeking to induce Luschen to invest the proceeds from the sale of his grain elevator in stock of the Rainbow Lead & Zinc Company. Luschen was a farmer and knew nothing of the lead and zinc mining business, but consented to go with Peoples to Miami to look over the properties of this company. When they reached Miami, Peoples took him out to a mine, which was the property of this company, and introduced him to its president one Herring, who was on the ground and appeared to be in charge of the mining operations. The evidence does not disclose what, if any, representations were then made to Luschen by Herring in reference to the properties of the company. Luschen learned from Peoples that the plaintiff, R. H. Drennan, was the secretary of the company, and having had dealings with Drennan in the grain business and knowing him by reputation, Luschen told Peoples that he desired to talk to Drennan before he decided about purchasing the stock. Peoples and Luschen then came to Oklahoma City on March 6, 1918, and went to the office of the plaintiff. There Peoples informed plaintiff that defendant was contemplating buying some of the stock, but wanted to get some information concerning the property from plaintiff before making the purchase. Plaintiff thereupon told defendant in substance that the Rainbow Lead & Zinc Company owned three 40's near the center of the Miami lead and zinc field; that all of its machinery and equipment was paid for, and that the operations had been running about $200 a day net profit; that the company was solvent, owed no debts and was capitalized for $100,000, fully paid; that he had about $40,000 invested in stock of the company, for which he would not take $3 per share; that he thought the company would make big dividends for the stockholders thereafter; that he considered the purchase of the stock by defendant from Peoples at $2.50 per share a good investment.

Relying upon these statements and representations by the secretary of the company, Mr. Luschen paid to Peoples the sum of $2,500 in cash, and executed his note for $2,500 more in payments for 2,000 shares, The shares were to remain as a pledge to secure the payment of this note. It is further shown by the evidence that the Rainbow Lead & Zinc Company owned leases on three 40's in the Miami field, and that ore was discovered in one of these 40's a short time before defendant bought this stock. On making this discovery, the stockholders of the Rainbow decided to organize a subsidiary to be known as the Ottawa Lead & Zinc Company, and which was capitalized at $100,000. The stock of this subsidiary was distributed among the stockholders of the Rainbow as bonus stock, so that at the date of defendant's purchase the capital stock of the company outstanding was actually $200,000 instead of $100,000, as represented to the defendant. While it is not clearly shown by the evidence, the inference is very strong that the stock sold to the defendant was some of this bonus stock, and not original stock of the Rainbow. No dividend was ever paid upon this stock. In January, 1920, the holders of about 87 per cent. of the stock determined to liquidate the company and did so. The entire stock and property of the company was purchased by Herring, its former president, for the sum of $21,000, and $15,000 of this purchase money was used to pay some kind of record indebtedness which it is claimed the Rainbow owed to the Ottawa, and the remaining $6,000 was distributed to the stockholders as a liquidating dividend, the note sued on being credited by Drennan with $60, which was defendant's 3 per cent. on his 2,000 shares. Plaintiff, Drennan, took this note of the defendant from Peoples as a credit on the indebtedness which Peoples owed him and for which this stock was pledged at the time of this transaction. It is further shown that after the maturity of the note sued on in this action Peoples was still indebted to the plaintiff, Drennan, on the original $3,200 transaction between them.

It is thus apparent from the evidence in the case that the plaintiff, Drennan, had a direct personal interest in making a sale or this stock pledged to him by Peoples. It is also apparent from this evidence that Peoples had been unsuccessful in his efforts to sell the stock to Luschen after an inspection of the property at Miami, and that it was only after talking to the plaintiff, whom he knew by reputation and in whom he had confidence as a business man, and who was secretary of the company and in a position to state reliable facts regarding the value of its stock and holdings; that defendant was induced to part with his money. That the stock was in fact practically worthless is conclusively shown by the fact that the company was liquidated in less than two years thereafter and its entire stock and holdings sold for $21,000.

Under the facts shown in the record it can not be said as a matter of law that the allegations of fraud and misrepresentation contained in defendant's answer are without support in the evidence. This being true, the verdict of the jury. finding in effect that the sale of the stock to the defendant was induced by fraud and misrepresentation, and that plaintiff is not an innocent holder of the note sued on for value and in due course of business, is reasonably sustained.

The credibility of the witnesses and the weight and value to be given to their testimony was a question purely and only for the determination of the jury. In the case of American National Bank v. Halsell. 43 Okla. 126, 140 Pac. 399, this court said:

"As fraud in all its shapes is as odious in, law as in equity, and where the evidence of fraud is sufficient to satisfy the mind and conscience of the wrongful conduct charged, the finding in this matter will not be disturbed. In such cases this court will not review the evidence to ascertain where the weight lies."

It is unnecessary to cite other authorities consonant with the Halsell Case, because the substance of the holding there has been so often affirmed and approved by this court that the principle involved may be said to be elementary in this jurisdiction.

Plaintiff's second proposition questions the correctness of certain instructions given by the trial court to the jury. These instructions are numbered 3, 6, 7, and 7-A. Instructions 3 and 6 are not considered to be subject to the criticism directed against them. Instruction No. 3 simply tells the jury that if Homer Peoples practiced fraud upon the defendant in the sale of the stock, and that plaintiff knew of such fraud, the jury should return a verdict in favor of the defendant. Instruction No. 6 advises the jury if there was fraud practiced in the sale of this stock and that the plaintiff, Drennan, made the false statements and representations charged, and that they were relied on by the defendant and induced him to purchase the stock, then and in that event the verdict of the jury should be for the defendant. The complaint of instruction No. 7 is that it authorized a recovery of the $500 paid by defendant after the execution of the note sued on if the execution of the note and the sale of the stock was procured by fraud, and it is insisted that

there was no evidence upon which to predicate this instruction. The $500 was paid by the defendant in August, 1918, and the testimony shows that he knew nothing of the alleged fraud practiced upon him until after the liquidation of the company in January, 1920. This instruction is, therefore, not considered to be foreign to the issues raised by the evidence. Instruction No. 7-A reads:

"You are further instructed that where an officer of a corporation makes statements and representations as to its financial condition, the value of its stock and its immediate financial prospect, and amount of capital stock, are all matters peculiarly within the knowledge of the company, and when made with the view to induce another to buy stock in said company, are representations of matters of fact and not expressions of opinion."

This instruction is considered applicable to the facts shown in the record in reference to the official position of the plaintiff with the company, his personal interest in having the stock of Peoples sold, and the statements and representations which he made to the defendant to induce him to buy such stock. Before plaintiff made these statements and representations to the defendant, he was advised by Peoples that defendant wanted the benefit of his (plaintiff's) knowledge and information concerning the condition of the company and the value of the stock before purchasing same. This was tantamount to advising plaintiff that defendant was relying upon him not only as a business man, but as an officer of the company, and his statements thereafter made with this knowledge were properly denominated by the court in its instruction as "representations of matters of fact and not expressions of opinion." Hood v. Wood, 61 Okla. 294, 161 Pac. 210; Dalton v. Hopper, 74 Okla. 127, 177 Pac. 571.

Upon a consideration of the entire case, it is concluded that the instructions of the court, of which complaint is made, were not legally erroneous nor prejudicial to the substantial rights of the plaintiff, and that the verdict of the jury is reasonably supported by the evidence. The judgment of the trial court based upon this verdict should, therefore, in all things be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 26 C. J. p. 1192, §97.