## SOONER BOND COMPANY OF AMERICA v. DAVIS.

No. 25728.   March 17, 1936.

Rehearing Denied May 26, 1936.

Albert C. Hunt (W. C. Hall, of counsel), for plaintiff in error.

Elmer S. Rutherford, for defendant in error.

GIBSON, J. This is an action to rescind a written contract for fraud and to recover the amount paid out in pursuance thereof. Trial in the district court of Kay county resulted in a judgment for plaintiff, and the defendant has appealed. The parties are referred to herein as they appeared at the trial.

Plaintiff has moved to dismiss the appeal. As grounds for dismissal, it is alleged that the motion for new trial was not filed within the term at which the judgment was rendered, as required by section 400, O. S. 1931, and further, since no proper motion for new trial was filed, this appeal may not be considered as here on transcript for the reason that the same was not lodged here within six months from the date of the judgment appealed from.

The motion for new trial was filed within three days after judgment but after the expiration of the term at which the judgment was rendered. The controlling statute is section 400, O. S. 1931, which reads as follows:

"The application for a new trial must be made at the term the verdict, report or decision is rendered, and, except for the cause of newly discovered evidence, material for the party applying, which he could not, with reasonable diligence have discovered and produced at the trial, or impossibility of making a case-made, shall be within three days after the verdict or decision was rendered, unless unavoidably prevented."

It is well established in this state that the trial court is ordinarily without jurisdiction to entertain a motion for new trial filed after the term at which the judgment was ren-

dered. Muse v. Harris, 122 Okla. 250, 254 P. 72. But failure to file a motion for new trial within the term at which the judgment was rendered may be excused by showing that the party was unavoidably prevented from so doing. Gardner v. Blanton, 80 Okla. 143, 194 P. 1084. Therefore, the statute under consideration does not operate to divest the trial court of jurisdiction to hear and determine motions for new trial filed after the term. Such jurisdiction continues and the court may hear the motion where it is made to appear to the court's satisfaction that the party was unavoidably prevented from filing the motion within the term. Thus, this element of unavoidable delay is made a jurisdictional prerequisite to the court's authority to hear and determine the grounds for new trial assigned in the motion, but unavoidable delay is not made a ground for new trial and need not be assigned as such in the motion.

The record here is wholly silent as to this jurisdictional element. In so far as the record discloses, the motion for new trial was filed and presented and disposed of without mention on the part of anyone that the same was filed after the expiration of the term. No objection was made to its presentation, and no excuse offered for the delay. Since the statute does not oust the court of jurisdiction of the matter on the expiration of the term, and the want of jurisdiction does not affirmatively appear upon the face of the record, we are drawn to the conclusion that the court is presumed to have settled the jurisdictional fact to its satisfaction before proceeding to hear the assignments set out in the motion. To hold otherwise would result in the annulment of an order of the court for want of jurisdiction where that fact is not made to appear from the record, and would be contrary to the general rule that all presumptions warranted by the record should be indulged in support of the ruling of the court.

This conclusion is supported by the Supreme Court of Kansas in Schallehn v. Hibbard, 64 Kan. 601, 68 P. 61. The court there held as follows:

"The failure to file a motion for a new trial within three days from the rendition of the verdict or decision, or within the term at which the same is rendered, may be excused by a showing that the party was unavoidably prevented from so doing; and where the trial court has taken up and considered such a motion, the record not showing affirmatively the reason for so doing, it will be presumed that sufficient excuse was shown upon the hearing of the motion why it was not filed within the time required by statute."

Our statute under consideration was adopted from that state and is the same as the one under consideration in that case. We are in agreement with the holding of the Kansas court.

We therefore hold that this court is vested with jurisdiction to entertain this appeal.

The plaintiff purchased ten installment bonds issued by defendant company of the denomination of $1,000 each and paid thereon the sum of $3,000, representing the first two yearly installments. It is charged that plaintiff was induced to enter into the contract of purchase through fraud. In that regard the petition alleges as follows:

"That the defendants, John R. White and Harry Herman, as agents of the defendant company, opened negotiations with plaintiff on or about the month of July, 1930, the object of which was to sell said plaintiff bonds in the said defendant company, which they did by means of false and fraudulent statements, in effect, that the said plaintiff could, at any time after purchasing the said bonds, secure from the said company a loan thereon by assigning the said bonds as security and by further representing that at the end of two years, if the said plaintiff desired to withdraw from said company, or was dissatisfied in any way with the said bonds, that the said company would purchase the same for the amount paid by said plaintiff, plus the accumulated interest thereon, less any indebtedness due the company by said plaintiff."

There are further allegations concerning the improper investment of defendant's funds contrary to the terms of the bonds, and that plaintiff was deceived by the aforesaid false and fraudulent representations of defendant's agents and that she would not have invested her funds had she known she could not resell the bonds to defendant company after two years. Plaintiff seeks to rescind the contract of purchase and to recover the $3,000 paid thereon, less $750 theretofore borrowed from the defendant on the bonds.

Defendant resists the charge of fraud, and takes the position that plaintiff had ample opportunity to, and did, examine the written contract before she entered into same; that plaintiff's demand is contrary to the provisions thereof and that defendant is ready and willing to cancel the bonds and make settlement therefor according to the terms thereof.

The bonds which, with plaintiff's signed subscription therefor, constituted the written contract, contain the following provisions:

"Loan Value
"After this bond has been in effect two

full years, and provided all annual payments have been regularly made on the due date thereof, the company will lend, on the due assignment and sole security of this bond, properly signed, the various sums indicated in the loan table according to the duration of the bond, provided that the company shall receive interest on said loan in the sum of five and one-half per cent. per annum payable in advance, interest for the first year to be deducted from the amount set out in the loan schedule, the annual interest thereafter to be due and payable at the beginning of each year, and if not paid in cash, shall be added to the loan and become a part thereof and bear interest at the same rate. As the company's funds are loaned on long term securities, the company reserves the right to defer the loan for a period of sixty days.

#### "Loan Table

"After the end of the Second Year_____ $313.60 * * *

#### "Cash Value

"At the end of the second year hereof, or at any time thereafter, if this contract be in full force as herein provided, the company will, upon surrender of this bond, properly endorsed for cancellation, pay the holder hereof its cash surrender value. The cash surrender value is determined by the amount shown on the loan table according to the bond year. From that amount is to be deducted the total amount of all indebtedness due to the company by reason of default in payments, loans previously made or interest charges thereon."

The due date of installments was the annual date of the bonds, and 30 days of grace was allowed for payment.

Prior to the end of the second year, plaintiff entered into negotiations with defendant to surrender her bonds at the end of the second-year period, claiming the cash surrender value of each bond was $313.60. This offer the defendant declined on the ground that under the terms of the bonds plaintiff was compelled to pay the third year installment of $150 on each bond, due at the beginning of the third year, making the cash surrender value of each bond actually $163.40 instead of $313.60. Plaintiff thereupon commenced this action to rescind the contract and to recover the $3,000 paid thereon, less the sum of $750 previously borrowed from defendant upon the bonds.

Plaintiff prosecuted this action upon the theory that defendant, through its agents, fraudulently represented its own private legal interpretation of the foregoing provisions of the bonds by actually promising orally and in the language of the bonds, that "at the end of the second year hereof, or at any time thereafter, if this contract be in full force as herein provided, the company will, upon surrender of this bond, properly endorsed for cancellation, pay the holder thereof its cash surrender value. The cash surrender value is determined by the amount shown on the loan table, according to the bond year." This provision of the bonds plaintiff says was interpreted to her by defendant's agents as meaning that she could withdraw her entire investment at the end of the second year period, but, she says, these explanations and promises were made mala fide, and without intention on the part of defendant to perform as promised. Thus, she contends, the representations that defendant would perform the contract as promised constituted a misrepresentation of the existing fact that defendant had no intention of so performing, and therefore said misrepresentations constituted a fraud upon her sufficient to warrant rescission of the written contract.

There is evidence sustaining the foregoing contentions. It is further revealed that the agents of defendant actually believed that plaintiff could withdraw her entire investment as she now seeks to do. There is also evidence that the officers of defendant company had no intention of paying plaintiff $313.60 for each bond at the end of the second year, but intended to pay her only the loan value of $313.60 less $150 required for the third year installment.

Defendant says the evidence of fraud is insufficient to warrant a judgment for plaintiff rescinding the written contract. It is contended that plaintiff has failed to sustain the burden placed upon her by the general rule that fraud in procuring the execution of a written contract is never presumed but must be proved by clear, cogent, and convincing testimony.

Rescission of a written contract on the ground of fraud cannot be had upon a bare preponderance of the evidence which leaves the issues in doubt, but the preponderance of the evidence must be so great as to overcome all opposing evidence and repel all presumptions of good faith. Ransom v. Fields, 169 Okla. 68, 35 P. (2d) 935; Littlefield v. Aiken, 130 Okla. 142, 265 P. 1054.

The foregoing rule does not require this court to examine the record in law actions, or actions properly triable to a jury, and determine therefrom the preponderance of the evidence. The rule is for the guidance of the triers of the facts. Where the issue of fraud in such cases has been determined by the jury, or by the court where jury is waived, this court will examine the evidence

only to the extent necessary to ascertain whether or not there is evidence tending to support the verdict or judgment. If there is such evidence, the verdict or the judgment, as the case may be, should be conclusive on this court. American Nat. Bank v. Halsell, 43 Okla. 126, 140 P. 399; Drennan v. Luschen, 116 Okla. 123, 243 P. 948.

In the instant case the action was one properly triable to a jury. It was for recovery of money after rescission of a contract. Section 350, O. S. 1931. The fact that the jury was waived during the course of the trial and the cause submitted to the court by agreement does not alter the character of the action. Contrary to defendant's contention, this court will not weigh the evidence on the question of fraud to ascertain whether or not the judgment is against the clear weight of the evidence as is done in actions purely equitable. The weight to be given the judgment of the trial court on conflicting evidence turns on whether the cause was one properly triable by the court or one properly triable to the jury. Halsell v. Beartail, 107 Okla. 103, 227 P. 392. In the instant case, therefore, the judgment of the trial court is entitled to the same weight as the finding of a jury. Farmers Co-op. Elevator Co. v. Farmers Union Exchange, 127 Okla. 275, 260 P. 755.

Plaintiff had ample opportunity to examine the written contract. It is evident, also, that she did examine the contract, which consisted of the bonds and her signed subscription therefor. Defendant says that in the face of these facts, there being no evidence that plaintiff was not at all times in possession of her faculties, she is bound by the contract and that the misrepresentations as to defendant's actual private interpretation of the contract is not that kind of fraud permissible of proof by parol evidence where the effect is to vary the terms of a written instrument. As support for this proposition, defendant has cited Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 P. 577; Ames v. Milam, 53 Okla. 739, 157 P. 941; White Sewing Mch. Co. v. McCarty Furniture Co., 58 Okla. 545, 160 P. 495; Ozark States Trust Co. v. Winkler, 84 Okla. 7, 202 P. 12.

The rule announced in the foregoing decisions applies where the written contract is plain and unambiguous in its provisions. See Societe Titanor v. Sherman Machine & Iron Works, 172 Okla. 213, 45 P. (2d) 144.

The plaintiff, however, does not charge that the provisions of the contract were ambiguous. She takes the position that the promises and representations made by the agents are supported by the provisions of the bonds; that in the words of the agents and the words of the bonds, "The cash surrender value is determined by the amount shown on the loan table, according to the bond year." This clause, she contends, fixes the value of her bonds at the end of two years, and that defendant's fraud consisted of its private intention at the outset not to abide by this provision. The loan table here referred to simply provides: "After the end of the second bond year * * * $313.60." In this table there are contained no exceptions. Payment in the amount set out in the loan table was made contingent upon the contract being in full force. On account of the 30 days' grace period therein provided, the contract was clearly in force for 30 days after the end of the two-year period.

This case does not present a question of misunderstanding of the contracting parties as to the provisions of the contract. Plaintiff's position is that the terms of the contract were agreed upon at the time of the execution thereof, and that the contract bears out her contention, but that the defendant fraudulently represented its intentions as to performance. The whole matter narrows down to this: There was actually some ambiguity in the provisions of the contract relating to the amount to be paid the bondholder on surrender of the bonds. Those provisions were explained to plaintiff as meaning a certain thing. That meaning was agreed upon by the parties, the defendant acting through its agents. Defendant had no intention of performing according to the agreement. The fact that its agents were innocent of the actual intention of defendant has no bearing on the case. There is evidence sustaining these facts. Under this state of facts this case is controlled by the decision in McLean v. Southwest Casualty Ins. Co., 61 Okla. 79, 159 P. 660. There it was held as follows:

"There is a wide distinction between the nonperformance of a promise and a promise made mala fide, and without any intention at the time of making it to perform it. And while ordinarily a statement upon which fraud may be predicated must be of an existing fact, yet if a promise is made to be performed in the future, as an inducement to obtain a contract, if the intention not to perform the promise be shown to have existed at the time the promise was made, such false promise constitutes cognizable fraud."

See, also, Franklin Bond Co. v. Smith, 163 Okla. 70, 20 P. (2d) 912.

The two agents who made the sale to plaintiff were made parties defendant in the

action. At the close of the testimony plaintiff confessed that the evidence was not sufficient to warrant a judgment against the agents. Defendant makes the contention that it was on the testimony of these two parties, who were plaintiff's witnesses, and the testimony of the plaintiff herself, that plaintiff relied to establish her allegations of fraud, and that since the evidence against the defendant was no stronger than it was against the agents, then certainly the evidence was not sufficient as against defendant.

We cannot agree with this contention. There is no evidence that these agents were aware of the fact that the defendant's officers had no intention of carrying out the contract as represented by the agents. Therefore, the agents personally had no part in the actual fraud relied on by plaintiff to vitiate the contract. It is clear that they at all times acted in good faith.

We find no error. The judgment is therefore affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY and PHELPS, JJ., concur. CORN, J., dissents as to Syllabus No. 1, but concurs in remainder. RILEY, BAYLESS, and WELCH, JJ., absent.