## MID-CONTINENT LIFE INS. CO. v. SHARROCK.

No. 21582. Opinion Filed Feb. 14, 1933.

Rehearing Denied March 14, 1933.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiff in error.

I. M. King and John P. Crawford, for defendant in error.

OSBORN, J. This action was filed in the district court of Johnston county by Henry Wade Sharrock against the Mid-Continent Life Insurance Company, a corporation, and involves two insurance policies in the sum of $5,000 each. Plaintiff alleges that the policies were sold and delivered to him on the dates of October 15, 1925, and March 19, 1926, respectively, and that he paid the first annual premiums thereon; that the policies provided that if the insured became wholly disabled by bodily injuries or diseases, the company would pay to insured a monthly income of one per cent. of the face amount of the policy, which income would be continued during the lifetime and continued disability of the insured, and under such conditions the premiums would be waived. Plaintiff alleges that during the spring and summer of 1926, he had a nervous breakdown, and became wholly disabled, and on October 20, 1926, made proof of his condition to the company. He charged that, on March 23, 1927, an agent of the company called at his home and tendered to him the amount of the premiums already paid and that he surrendered to this agent the two policies in question and they were subsequently canceled by the company; that on account of his mental condition at the time he did not understand the nature of the transaction and that the company's agent, being advised as to his mental condition, practiced fraud upon him to induce him to surrender the policies. Plaintiff seeks judgment for the sum of $2,625, being the amount accrued on the policies on the basis of the disability provision, and asks that the policies be adjudged to be in full force and effect and restored to plaintiff.

Defendant entered a general denial and pleaded settlement with plaintiff, alleging that the policies were voluntarily surrendered for cancellation, and that defendant refunded the full premiums theretofore paid by the plaintiff. The cause came on for trial on November 6, 1929, the court submitting same to a jury.

The jury was instructed that if they believed from the evidence that plaintiff was so mentally deranged that he did not understand the nature of the transaction at the time he and his wife surrendered the policies to the defendant, and if they further found that at the time of settlement he was totally and permanently disabled, their verdict should be for plaintiff, otherwise the verdict should be for the defendant.

The jury returned a verdict which is as follows:

"We the jury, impaneled and sworn in the above-entitled cause, do upon our oaths find that the plaintiff was insane at the time of the settlement and did not understand such settlement."

Whereupon the court rendered judgment in which it found that in the summer of 1926, the plaintiff had suffered a nervous breakdown and had become wholly disabled, by reason of disease of his nerves and mind, from engaging in any occupation or employment whatever for remuneration or profit, and further found that while suffering from said nervous and mental breakdown, the defendant, knowing plaintiff's condition, refunded to him the premiums paid on said policies and secured from plaintiff the policies and caused them to be canceled, which constituted a fraud upon plaintiff, and ordered the policies reinstated from the date of April 20, 1927, and rendered judgment against defendant for $2,584.01, being the amount ac-

crued under the disability clause of the policy less the amount of the premiums refunded to plaintiff.

From this judgment the defendant has appealed.

Defendant contends that this action is one sounding in law, and that the evidence is insufficient to warrant the verdict of the jury, and the verdict of the jury is insufficient to warrant the judgment. Plaintiff contends that this is an action in equity, and that the money judgment was given by the court as incidental to the primary relief—the reinstatement of the policies.

At the outset, it is necessary for this court to determine whether this case is controlled by the principles of law or equity. This issue is determinable by the pleadings, rights and remedies of the parties. Newbern v. Farris, 149 Okla. 74, 299 P. 192.

The primary cause of action here on the part of the plaintiff is a reinstatement of the life insurance policies. In this connection plaintiff alleges fraud on the part of the company. The defendant denies the fraud and pleads the cancellation of the policies. As an incident to the reinstatement of the policies, there is an issue of a money judgment arising under the disability clause of the policies. In the event plaintiff is unsuccessful in securing the reinstatement of the policies, his cause of action for a money judgment must fail.

It is therefore clear that the gravamen of this action is the reinstatement of the policies, and that the question of a money judgment is merely incidental thereto, and that this is a case of equitable cognizance. Warner v. Coleman, 107 Okla. 292, 231 P. 1053; Simmons v. Harris, 108 Okla. 189, 235 P. 508.

Since the court in this case is acting as a chancellor in equity, it can determine, not only the equitable question involved, that is, the reinstatement of the policies, but it is also authorized to render such other relief as might be justified under the facts, even though legal principles are involved. In the case of Southwestern Surety Insurance Co. v. Douglas, 81 Okla. 232, 198 P. 334, the court said:

"As courts of equity have always asserted the right to give complete relief on all matters properly brought before them, the party who seeks in a court of equity relief by reformation of a written instrument or bond may ask and obtain reformation thereof and damages for a breach of a condition of indemnity therein contained, when reformed."

See, also, Depuy v. Selby, 76 Okla. 307, 185 P. 107.

In the case of McKay v. Kelly, 130 Okla. 62, 264 P. 814, it is said:

"Where a court of equity has obtained jurisdiction of a controversy for any purpose, it will retain jurisdiction for the purpose of administering complete relief, and it may to this end determine purely legal rights which otherwise would be beyond its authority."

The case being of equitable cognizance, therefore, the court could, grant full and complete relief by finding the facts as to his disability and rendering judgment in accordance with such findings.

Defendant contends that the judgment of the court is not justified by the verdict of the jury. But our courts have repeatedly held that the verdict of a jury in matters of equitable cognizance is advisory only, and may be entirely disregarded by the court. In the case of Kentucky Bank & Trust Co. v. Prichett, 44 Okla. 87, 143 P. 338, the rule is stated as follows:

"In cases of equitable cognizance, while the judge may call in a jury or consent to one, for the purpose of advising him upon the questions of fact, he may adopt or reject their conclusions, as he sees fit, and the whole matter must eventually be left to him to determine, and instructions to the jury furnish no grounds of error upon appeal. It is not only the right, but the duty, of the court, to have determined all questions of fact as well as of law." Crump v. Lanham, 67 Okla. 33, 168 P. 43; Teachers Conservative Investment Association v. England, 115 Okla. 298, 243 P. 137.

It is contended that the evidence is insufficient to support the judgment of the court. and in this connection this court will review the entire record to determine whether or not the findings and judgment of the trial court are against the clear weight of the evidence. See McKay v. Kelly, 130 Okla. 62, 264 P. 814; Crump v. Lanham, supra: Cull v. Cavanaugh, 95 Okla. 157, 218 P. 299: Thomas v. Halsell, 63 Okla. 203, 164 P. 458.

As before stated, the record shows that the last policy in question was issued in March, 1926. The testimony of Mrs. Arizona Sharrock, wife of plaintiff, is to the effect that the plaintiff suffered a nervous breakdown about the last of May, 1926; that on the advice of her physician she wrote the company for disability proof, and that about the 26th day of October, 1926, Dr. H. B. Kniseley came to examine her husband; that she later wrote a letter to the company making some inquiry about

waiving the premiums and suggested that they would settle with the company for the return of the premiums already paid; that such suggestion was made by her because her husband made her do it, and that she did not consider it to the best interests of her husband.

Dr. H. B. Kniseley testified that he had been local examiner for the company at Tishomingo for 17 years; that he received a request from the company to examine plaintiff, and after examination concluded that plaintiff was permanently disabled; that his symptoms were extravagance and expenditure of money, cursing of his wife and friends, and threatening to do bodily harm to these people, and that his objective symptoms were insane expressions, wild talk, foolish statements, a pronounced nervous disposition, and that plaintiff thought he was a great business man. The doctor further stated that he did not think that plaintiff would ever make a complete recovery from his mental condition. The following question and answer is found in his testimony:

"Q. Now, what was wrong with Mr. Sharrock at the time you made the examination? A. Well, I guess that about the shortest way to say that is that he was insane."

It will be noted that this examination was made about six months prior to the surrender of the policies, and we will presume that the doctor transmitted his findings immediately, so that the company was advised as to the condition of the plaintiff.

Dr. Walter Hardy, who was called as a witness for the defendant, testified that he examined the plaintiff during the month of October, 1926. The following are brief excerpts from his testimony:

"Q. Doctor, I will ask you to state what the result of that examination was and what you found to be his condition? A. From the physical examination, I was unable to find anything definite; as he complained of so many things being wrong with his stomach and bowels, and we made an X-ray and other tests, and we couldn't find out that he had anything wrong with him, except his mental condition. I think it was mostly due to depression in his business. He talked a great deal like that at the time he was over here. * * * Q. Did you see any evidence in Sharrock's condition of neurasthenia, or any other nervous condition evidencing insanity on his part? A. Well, that is really why I called up Dr. Caton and Dr. Cummings of Ravia. I told them I thought he was crazy. Mental aberration would mean the same. * * * Q. Doctor, we will ask you to state whether or not in your opinion this man Sharrock, at the time

of his examination, was suffering from a total disability? A. No. * * *"

The record discloses that Dr. Hardy submitted the following report to the company:

"The Hardy Sanitarium
"212 First Avenue, S. W.
"Ardmore, Oklahoma.
"October 27, 1929.
"Mid-Continent Life Insurance Co.
"200 North Robinson St.
"Oklahoma City, Oklahoma.

"Gentlemen:

"Re: Henry W. Sharrock
"Ravia, Oklahoma.

"The above party, Mr. Henry W. Sharrock, came to me on October 4th, for examination. He presented an array of symptoms both physically and mentally he has suffered since he failed in business.

"After going over him thoroughly I find that he has hemorrhoids, which perhaps causes the numerous symptoms he presents. I advised him to have them removed, which I intended to do under local anaesthesia.

"Mr. Sharrock and his wife both presented me with policies which they have in your company, and both are trying to be worked under total disability, which I am unable to see that they have. The most Mr. Sharrock is suffering with is mental aberrations as a result of being closed out of business. At least he has no physical permanent disability.

"I trust this is the information you desire.

"Very truly,
"(Signed) W. Hardy, M. D."

Dr. S. E. Cummings, as a witness for plaintiff, testified that he had examined the plaintiff sometime after the examination by Dr. Kniseley, and that in his opinion the plaintiff could not do manual labor for hire nor carry on his farm work nor operate his mercantile business.

Dr. O. E. Welborn, in testifying for plaintiff, stated that plaintiff could not do any work or draw any salary in his present condition. He further stated: "I regard his condition as hopeless." He further stated that he had plaintiff under observation from September 12, to October 20, 1928.

Dr. J. H. Blackburn, as witness for plaintiff, stated that he had encyphilitis, or trouble at the base of the brain; that one in such condition was easily influenced; that plaintiff's condition was fluctuating; he was sometimes better and sometimes worse.

The record shows that plaintiff was examined on July 1, 1926, in the county court

of Johnston county, in a sanity proceeding, and after examination he was declared sane. It is also shown that on December 16, 1927, plaintiff was declared insane by the county court of Coal county, and committed to Eastern Oklahoma State Hospital at Vinita.

In connection with the testimony of Dr. Hardy, Dr. M. Smith, a medical director of the defendant company, testified that he visited plaintiff about the 18th of March, 1927, and that he discovered nothing wrong with plaintiff's condition at that time. Defendant also introduced a number of non-expert witnesses, who gave varying opinions based on the acts and conduct of the plaintiff, but space will not permit setting forth this evidence in detail.

After carefully reviewing the entire record in the case, it cannot be said that the judgment of the trial court is contrary to the clear weight of the evidence.

Other assignments of error, such as objections to the instructions of the court and as to the sufficiency of the evidence, have been hereinabove disposed of.

The judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, ANDREWS, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and McNEILL, J., absent.