## BROTHERHOOD OF RAILROAD TRAINMEN v. BROWN.

No. 27126. March 30, 1937.

Rehearing Denied May 11, 1937.

Application for leave to File Second Petition for Rehearing Denied May 25, 1937.
Dissentng Opinion Sept. 21, 1937.

Harper & Lee, for plaintiff in error.

Glenn O. Young, for defendant in error.

BAYLESS, V. C. J. Maud L. Brown, formerly Garletts, claiming to be the beneficiary named in a benefit certificate issued to her son, Fred O. Garletts, now deceased, by Brotherhood of Railroad Trainmen, a fraternal insurance organization, instituted an action in the district court of Creek county, Okla., to recover under said policy. The judgment of the trial court, based upon the verdict of the jury, was in her favor and the defendant appeals.

The allegations of her petition pleaded the issuance of the policy naming her beneficiary, the continued existence thereof, in full force and effect, the death of the insured, due proof of loss, and the failure and refusal of the defendant to pay to her the benefits provided.

The defendant's answer specifically admitted all of these allegations, but alleged it had paid the benefits due under the certificate to Mrs. Martha Ann Garletts, widow of the deceased son, by virtue of an assignment thereof from the plaintiff to said widow.

The plaintiff thereupon replied denying the execution of said assignment, and alleging, further, that if she did execute it, her signature thereto was obtained by the agents of defendant by fraud and misrepresentation. Upon these issues the case went to trial before a jury.

When the opening statements of counsel had been made, which are not in the casemade, the defendant assumed the burden of proof. Evidence was introduced by both parties relating to the circumstances under which plaintiff affixed her signature to the various papers presented to her. From the whole record we are of the opinion that the only issue tried by the parties was whether plaintiff voluntarily and wittingly assigned the benefits to the son's widow; or, whether

her 'apparent assent and her signature to the assignment were obtained by misrepresenting the nature and effect of the instruments she did actually execute.

The first proposition argued by defendant covers several 'assignments of error, all relating to the law applicable to the issue of fraud and misrepresentation as involved by the court's rulings on defendant's demurrer to plaintiff's evidence, its motion for directed verdict, the weight of the evidence in support of the judgment, and motion for judgment non obstante veredicto.

To properly approach the consideration of this argument, we must first determine the nature of the action tried 'and whether the trial judge was acting as a chancellor or law judge. This action in its inception was one at law to recover a money judgment. However, it did not remain such. It eventually resolved itself into an equitable action by which the plaintiff admittedly was entitled to judgment for the money, if she could cancel the executed assignment as fraudulent. In other words, she was seeking to escape the legal effect of an executed instrument, which was all that stood between her and the money. The money judgment relief was wholly dependent upon the equitable relief, the cancellation of the assignment. We are impressed with the analogy between this case and Mid-Continent Life Insurance Co. v. Sharrock, 162 Okla. 127, 20 P. '(2d)' 154. We therefore hold that the action as tried was equitable, and the jury acted in an advisory capacity only. The judgment can only be set aside in the event this court weighs the evidence and finds the judgment 'against the clear weight of the evidence in the light of the principles by which such weight is to be determined.

The plaintiff is in the position of having asserted actionable fraud. She occupies the position of one seeking to cancel an instrument she has executed, and to escape its legal effect. This court has had numerous occasions to announce the rules by which plaintiff seeks her relief and the burden of proof she must assume 'and carry forward.

As a rule fraud is never presumed. Herron v. M. Rumley Co., 29 Okla. 317, 116 P. 952; Gordon v. State, 169 Okla. 399, 37 P. (2d) 270; and Cromwell v. Ream, 175 Ok!a. 408, 52 P. (2d) 752, and other cases.

We have said that the proof must be clear, cogent, convincing, positive, and satisfactory. Davis v. Howe, 99 Okla. 118, 226 P. 316; Garland v. Carpathia Petroleum Co., 99 Okla. 210, 226 P. 379, and other cases.

We have said that the evidence of fraud must preponderate to the degree of overcoming all opposing evidence 'and repelling all presumptions of good faith. Rogers v. Harris, 76 Okla. 215, 184 P. 459; Owen v. U. S. Surety Co., 380 Okla. 123, 131 P. 1091; and Hembree v. Douglas, 169 Okla. 403, 37 P. (2d) 314, 'and other cases.

Where a transaction is fairly susceptib'e of two constructions, the one which will free it of the imputation of fraud will be adopted. Clarke v. Lockstone, 170 Okla. 316, 39 P. (2d) 971; Cromwell v. Ream, supra, and Gungoll v. Elsberry, 177 Okla. 301. 58 P. (2d) 852, and other cases. Likewise, where fraud is alleged, it must be proved and cannot be inferred from facts consistent with honesty of purpose. Cromwell v. Ream, supra.

With these cardinal rules to guide us, we must weigh the evidence and adjudge the alleged error of the trial court in the light thereof. The facts are these: The insured son lived in Pennsylvania; he was employed by a railway company and was a member of the defendant organization, which is a labor union embodying fraternal insurance features; and, while yet a single man, he procured the benefit certificate sued on and named his mother, the plaintiff, who was then Maud L. Garletts, beneficiary. She then was, or later became, a citizen of Oklahoma, and was such when the son died. Thereafter, he married and Martha Ann Garletts was his wife and is now his widow. He died without having changed the beneficiary under the policy. There was some testimony that he desired to make this change while in the hospital on his deathbed, but his wife dissuaded him, saying that she and his mother would not fight over the money. It does not appear whether he could have effected 'a change before death occurred. When plaintiff received notice of his death, she went to Pennsylvania accompanied by a minor grandson, and the funeral was held the day she arrived. At the time of the funeral she had not seen her daughter-in-law in two years, and had never met any agent of defendant. After the funeral the secretary of the local lodge of defendant went to the home of the widow to arrange for the death claims. At that time he learned the plaintiff beneficiary had remarried and he asked certificate proof thereof, for which plaintiff was forced to send to Oklahoma. He detailed some of the conversation which occurred there between him and the two grief stricken women, and from this concluded that plaintiff desired the widow to have the money because "she was a good

girl," and "had made the deceased a good wife" and "had the burden of expenses of the death" to care for. Plaintiff denies that she made any statements by which she intimated to anyone an intention to assign this money. In any event, he conveyed this intimation to the home office of defendant, and requested its form of assignment. He testified that when he received this, he presented it to plaintiff, and read it over to her, and she executed it in the presence of himself and a neighbor woman called in as a witness. This neighbor woman testified as to the signature, but heard no conversation relating to the plaintiff's purpose or frame of mind. When the necessary papers had been obtained and signed, including the assignment, they were forwarded to the headquarters of defendant at Cleveland, Ohio. A check payable to the widow was then sent the treasurer of the local lodge. When he called at the widow's home to make delivery, he met the plaintiff, who informed him the widow was away. He then asked the plaintiff to inform the widow he had the insurance check, which she could have by calling at his home. He testified that he introduced himself to plaintiff, identified himself as "Treasurer of Youghiogheney Lodge No. 218, Brotherhood of Railroad Trainmen," and stated he had the "draft in payment of Brother Garletts' claim." Plaintiff does not deny this, but asserts that she supposed it was some other insurance money to which she had no claim, although she knew he had insurance with the organization the treasurer represented. When she had given this information to the widow, the widow got the check. According to the plaintiff, when the widow returned with the check, she, the widow, informed her, the plaintiff, in substance that it was the money on Fred's insurance, and this was the first time she knew anything about the widow receiving the check which she claims she was entitled to receive. When she queried the widow as to why she and not the plaintiff had gotten the check, the widow said, in substance, "You gave it to me." Plaintiff says she told the widow, "That's a lie." She is corroborated in this latter statement by her minor grandson. The widow cashed the check. Plaintiff made no protest to defendant in any form until she had returned to Oklahoma. She filed this action September 13, 1929, whereas her son died December 25, 1927, nearly two years previously. Plaintiff remained with her daughter-in-law some time thereafter, and they visited around among plaintiff's relations. When plaintiff returned to Oklahoma, the daughter-in-law paid her fare—plaintiff says only her ticket was purchased. The daughter-in-law says she bought the ticket and gave her $100 besides.

Under the record, the judgment of the trial court in favor of the plaintiff is against the clear weight of the evidence. It may be said that the plaintiff's evidence is clear and positive. But it does not preponderate to the degree of overcoming that of the defendant and, in addition, repelling the presumptions of good faith which adhere to the defendant's actions. There is a total absence of any charge of motives on the part of the defendant or its agents, and likewise there is no proof either directly or indirectly that the defendant or any of its agents would benefit either directly or indirectly by the assignment. The evidence is clear that the plaintiff dealt with the defendant through two officers of the local lodge in Pennsylvania, and with no one else representing the defendant. The evidence is likewise clear that plaintiff met one of these men either two or three times, and the other man once; and that she had never known or met them prior to her son's death, nor since except in connection with the trial of this action. The evidence is undisputed that these two men had never known Martha Ann Garletts until they had met her at the deathbed of her husband. There is no cogent or convincing evidence of fraud on the part of the defendant or its agents.

The plaintiff cites and relies upon the rule of law found in First National Bank v. Wade, 27 Okla. 102, 111 P. 205, 35 L. R. A. (U. S.) 775; Chickasaw Loan & Trust Co. v. Mills, 59 Okla. 230, 158 P. 1156, and Thompson v. Coker, 112 Okla. 268, 241 P. 486, and other cases not necessary to mention herein.

These are cases where the parties charging fraud were unable to read, and therefore the rule therein stated is not applicable to the facts in this case.

The judgment of the trial court is reversed and remanded.

OSBORN, C. J., and PHELPS, CORN, and GIBSON, JJ., concur.

WELCH, J., (dissenting). I cannot agree that the rule of law as stated in paragraph

1 of the syllabus is correct. I do not think the facts stated are sufficient to necessarily change the action from a jury case to a nonjury · one. The majority opinion relies upon Mid-Continent Life Ins. Co. v. Sharrock, 162 Okla. 127, 20 P. (2d) 154. It seems to me that the two cases readily distinguish themselves one from the other, and that the opinion in the Sharrock Case, supra, is not authority for the conclusion reached by the majority opinion in this case.

I, therefore, respectfully dissent.

I am authorized to say that HURST and DAVISON, JJ., concur in these views.