**BALL et al. v. FLESHMAN et al.**

No. 27174.   June 7, 1938.

Rehearing Denied June 28, 1938.

Application for Leave to File Second Petition for Rehearing Denied Nov. 15, 1938.

Roy H. Ball, Clay M. Roper, and E. Blumhagen, for plaintiffs in error.

Falkenstine & Fisher and Theodore Graalman, for defendants in error.

HURST, J. Robert A. Fleshman died intestate on November 12, 1933. He was survived by his widow, one son, one daughter, and three grandchildren, who were the children of a deceased daughter. This action was brought by the grandchildren against the widow, the son and his wife, and the daughter and her husband. The controversy involves the validity of two warranty deeds dated April 23, 1932, executed by Robert A. Fleshman and his wife, Mary A. Fleshman, conveying all of the real estate then owned by them to their son and daughter, to the exclusion of the grandchildren, but reserving to the grantors "all the rents and incomes from said land during their natural lifetime."

The plaintiffs in their petition set out two causes of action. In their first cause of action they alleged, in effect, that Robert A. Fleshman had been mentally incompetent for several years prior to his death, and that the deeds were acquired by undue influence and were null and void. It was alleged, also, that Robert A. Fleshman "did not sign the purported deeds," and that they now "bring this action for the purpose of canceling and setting aside of said deeds and for the purpose of the court causing said estate to be administered or to grant to the plaintiffs such equitable relief to which they are entitled." The material allegations of the prayer are as follows: "Wherefore, plaintiffs pray that they have and recover from the defendants their proportionate share of the estate of Robert A. Fleshman, deceased, and that the said deeds * * * be canceled to the extent of the interest of said plaintiffs. * * *"

In plaintiffs' second cause of action they incorporated the allegations of the first cause of action and sought to recover certain rents and profits arising from said land, and also attorney's fees and exemplary damages.

The cause was submitted to a jury, and a verdict returned in favor of defendants. Judgment was entered thereon, and plaintiffs bring this appeal.

We must first determine whether this action is legal or equitable in its nature. In Mid-Continent Life Insurance Co. v. Sharrock (1933) 162 Okla. 127, 20 P.2d 154, it was held that the question of whether a case is legal or equitable in its nature is determinable by the pleadings, rights, and remedies of the parties, and if it appears that the primary cause of action is equitable in its nature and that there are other issues of a legal nature which are incidental to the primary cause of action, the cause is one of equitable cognizance and will be determined on equitable principles. Also in Warner v. Coleman (1924) 107 Okla. 292, 231 P. 1053, where the petition commingled the legal action of ejectment with the equitable action of rescission, it was held that a petition which does not allege facts to show that plaintiff is the owner of the legal or equitable title, and entitled to immediate possession of the premises, but alleges a state of facts for rescission of a deed on the ground of fraud, on account of which equitable relief is prayed to the end that the title be reinvested in the plaintiff, the action is one of equitable cognizance, although the possession may follow as an incident to the granting of the equitable remedy. We think it clear in the instant case that the gravamen of the action is the cancellation of the deeds. In fact, plaintiffs so stated in their petition. Moreover, there are no allegations to the effect that plaintiffs are the owners of the legal or equitable title to the real estate in controversy, or that they

are entitled to the immediate possession thereof. Under the allegations of the petition, the right to possession as well as the legal title would follow as an incident to the granting of the equitable remedy of cancellation. The answer of defendants, being a general denial, injected nothing additional into the action in this regard. It therefore appears that this is a case of equitable cognizance.

■ The first contention of plaintiffs deals with the sufficiency of the evidence. In determining this issue certain rules are fundamental. In an equitable action the judge may call a jury or consent to one, for the purpose of advising him upon the questions of fact, but he may adopt or reject its conclusions, as he sees fit, and the whole matter must eventually be left to him to determine. Mid-Continent Life Ins. Co. v. Sharrock, supra. We must treat the general findings of the court as a finding of every specific thing necessary to sustain the judgment and must examine the whole record and weigh all the evidence. The judgment of the trial court will be reversed only if, from such examination, we find it to be against the clear weight of the evidence.

With these rules in mind, we have carefully read the voluminous record in this case. On the issue of mental capacity and undue influence, the evidence was directly conflicting. Plaintiffs and their witnesses testified as to the peculiar conduct of the deceased for two or three years prior to his death and as to the conduct of his wife in dealing with him, tending to show that he was mentally deranged. They also gave their opinions to that effect. On the other hand, the acts referred to were flatly denied by the defendants and their witnesses, and they expressed their opinions that deceased was mentally competent and transacted his own business up until a few weeks before his death. We find no evidence of undue influence, and such evidence as there is on this point was to the contrary. It would serve no useful purpose to comment at length upon the evidence relied upon by the parties in this connection, for we think it quite apparent that the finding of the trial court on this issue of fact is not against the clear weight of the evidence.

The issue of forgery, however, presents a more difficult question. We frankly state that we see scarcely any resemblance between the signatures of Robert A. Fleshman, admitted to be genuine, and those alleged to be forged. Moreover, a handwriting expert testifying on behalf of plaintiffs stated that they were forgeries. But he did not state, except upon hearing had on motion for new trial, who, in his opinion, was the author of the forgery. His testimony was negative in character. Likewise plaintiffs themselves stated that the handwriting on the deeds was not that of deceased. The record also discloses certain facts which plaintiffs assert cast a doubtful light on the whole transaction, namely, the fact that the deeds bore the date of April 23, 1932, and were not recorded until December 11, 1933, the day before Robert A. Fleshman died, both being recorded on the same day; the fact that plaintiffs were not permitted to see the deeds until they procured a court order; and the facts purporting to show the interest of defendants' alleged disinterested witnesses.

On the other hand, the evidence adduced by defendants was directly contradictory on practically every material point. On their behalf, a banker, who was the notary public taking the acknowledgment on the deeds in question, testified that they were signed by Robert A. Fleshman in his presence and that he saw deceased affix his signature thereto. He further detailed the events in connection with the execution of the deeds. To impeach his testimony plaintiffs produced witnesses who stated that his reputation in the community for truth and veracity was bad, but to rebut this, defendants introduced similar evidence to the contrary. To further impeach the testimony of this witness, plaintiffs brought out the fact, upon cross-examination, that when plaintiffs' attorney called upon the witness shortly before the trial to inquire if the deeds were signed by someone on behalf of deceased, the witness refused to answer other than to advise them that he would testify at the trial. But defendants also introduced the testimony of another employee of the bank where deceased kept his account, to the effect that he knew the handwriting of deceased and that the signatures on the deeds were genuine. In addition to that, the most convincing testimony comes from Mary A. Fleshman, the widow of deceased, to the effect that the signature of deceased on a certain stock certificate introduced in evidence was genuine and that she saw him sign it in her presence. In our opinion, the signature on the stock certificate is identical to the signatures on the deeds in question. There is nothing in the record to discredit the testimony of this witness, and defendants' explanation of the discrepancy in the signatures admitted to be genuine and those alleged to be forged seems to us to be plausible. The former were written in pencil and appear to be in-

dorsements on checks, while the signatures alleged to have been forged were written in ink and appeared on the deeds of conveyance. It is not improbable that a person making disposition of his property would be nervous and proceed with more caution than he would in an everyday transaction such as indorsing checks, and these circumstances would result in a different appearance in the handwriting. Giving due weight to all the conflicting testimony and circumstances, we cannot say that the finding of the trial court on this issue of fact is against the clear weight of the evidence.

■ Plaintiffs complain of the giving of certain instructions to the jury and of the refusal to give certain requested instructions. But, in an equity case, instructions to the jury furnish no ground of error on appeal. Mid-Continent Life Ins. Co. v. Sharrock, supra; Kentucky Bank & Trust Co. v. Pritchett (1914) 44 Okla. 87, 143 P. 338; Barnes v. Lynch (1889) 9 Okla. 156, 59 P. 995.

■ Plaintiffs also contend that the court erred in permitting Mrs. Robert A. Fleshman, the widow of deceased, and Elvin Fleshman, the son and one of the grantees in the deeds in question, to testify as to the genuineness of the signature of deceased on the stock certificate above referred to. It is argued that such testimony is prohibited under the provisions of section 271, O. S. 1931 (12 Okla. St. Ann. sec. 384), relating to testimony by a party to a civil action, in his own behalf, in respect to a transaction or communication had by such party with a deceased person. They rely principally upon Pancoast v. Eldridge (1932) 157 Okla. 195, 11 P.2d 918, where it was held that a party to a civil action against the administrator of the estate of a decedent is incompetent to testify, in his own behalf, to facts which will establish an implied contract between such party and the deceased. But we do not think that the rule there urged is applicable here. The identification of the handwriting or signature of a deceased person is based upon knowledge that is independent of any communication or transaction with the deceased. By the great weight of authority, such testimony involves merely a matter of opinion,• and is not a personal transaction or communication between the witness and a deceased person. See 31 A. L. R. 460; Pool v. Beller, 104 W. Va. 547, 140 'S. E. 534, 58 A. L. R. 210. Therefore it was not error to admit this testimony.

In this connection, plaintiffs also contend that the court erred in permitting Elvin Fleshman to testify that he did not have any conversation with deceased about the deeds. We think this testimony was not objectionable for the reason that it was the very opposite of testifying concerning a transaction or communication with the deceased grantor. Coblentz v. Putifer (1912, Kan.) 125 P. 30.

■ Plaintiffs also assign as error the misconduct of the jury. Inasmuch as the verdict of the jury is only advisory in this case, we think the same rule applies as in connection with the instructions complained of. However, we have taken the precaution to examine the evidence in this regard and find no evidence tending to show that plaintiffs were prejudiced by the irregularity complained of. Such being the case, this assignment presents no ground for reversal. Shivers v. Territory (1903) 13 Okla. 466, 74 P. 899.

■ Plaintiffs also urge that the court erred in not granting a new trial on the ground of newly discovered evidence. The evidence referred to consists of documents bearing the signature of Robert A. Fleshman, deceased, written in ink. It is contended that this evidence is not cumulative for the reason that the signatures introduced at the trial and admitted to be genuine were all written in pencil. But the documents constituting newly discovered evidence were matters of public record in the county where deceased maintained his residence, and there was no evidence that any search was made for the same prior to the trial. Plaintiffs have failed to show the exercise of due diligence, and therefore the refusal to grant a new trial is not reversible error. Peters v. Central Nat. Bank of Enid (1935) 174 Okla. 329, 49 P.2d 1083; Parrish v. Nichols (1936) 175 Okla. 251, 52 P.2d 54; Green v. Blancett (1937) 179 Okla. 483, 66 P.2d 911.

■ Plaintiffs also complain of misconduct on the part of counsel for defendants and refer to certain remarks made at the trial. The principal statement complained of, however, does not appear in the record, except as an allegation in the plaintiffs' supplemental motion for new trial. It is therefore not reviewable by this court. Rosenfield v. Nelson (1924) 102 Okla. 81, 226 P. 1032; Federal Life Ins. Co. v. Firestone (1932) 159 Okla. 228, 15 P.2d 141.

Plaintiffs also complain of the method of cross-examination employed by counsel for defendants, but it is sufficient to say that from our examination of the record, we do not think that plaintiffs could have been prejudiced by the matters complained of.

The judgment is affirmed.

BAYLESS, V. C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur. OSBORN, C. J., and PHELPS, J., dissent. DAVISON, J., absent.